Gerard R. Luckman
Michael S. Amato
**FORCHELLI DEEGAN TERRANA LLP**
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553
Phone: 516-248-1700
gluckman@forchellilaw.com
mamato@forchellilaw.com

*Counsel to the Israel Schaya*

**Hearing Date: September 17, 2026**
**Hearing Time: 10:30 A.M.**

**Obj. Date: September 10, 2026**
**Objection Time: 5:00 P.M.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re: Chapter 11

TOYVATION LLC Case No. 26—43344 -ess

Debtor.

---------------------------------------------------------x

**NOTICE OF MOTION OF ISRAEL SCHAYA FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING EXAMINATIONS AND DIRECTING PRODUCTION OF DOCUMENTS**

**PLEASE TAKE NOTICE** that Israel Schaya ("Schaya" or "Movant") acting by and through his attorneys, FORCHELLI DEEGAN TERRANA LLP, will move this Court at the United States Bankruptcy Court, Eastern District of New York, Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East Suite 1595, Brooklyn, NY 11201-1800 by video conference on **September 17, 2026 at 10:30 A.M.**, or as soon thereafter as counsel can be heard before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, for an for entry of the order substantially in the form annexed to the Motion as Exhibit A directing the attendance for examination and production of documents and information by **Solomon Poller** and **Aron Landau** (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Motion is on file with the Office of the Clerk of the Bankruptcy Court, Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East Suite 1595, Brooklyn, NY 11201-1800 and may be examined during scheduled business hours or by accessing the Motion through the electronic filing system utilized by the Bankruptcy Court. A copy of the motion papers and all exhibits may also be obtained by email request to Gerard R. Luckman, Esq. at gluckman@forchellilaw.com or Michael S. Amato at mamato@forchellilaw.com.

**PLEASE TAKE FURTHER NOTICE**, that any responses or objections to the relief requested in the Motion, if any, must be in writing, conform with the Bankruptcy Code and Bankruptcy Rules, state with particularity the grounds therefor and shall be served upon and received by counsel for the Village at the address indicated below and filed with the Court, together with proof of such service, so that they may be received by no later than **September 10, 2026 by 5:00 P.M** (the "Objection Date").

**PLEASE TAKE FURTHER NOTICE**, that any party that wishes to participate at the Hearing must register with eCourt Appearances at least two (2) business days in advance of the Hearing. Instructions and the link to register using eCourt Appearances may be found here: https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourt-appearances.

**PLEASE TAKE FURTHER NOTICE** that if no objections are received by the Objection Date, the relief requested in the Motion may be granted without a Hearing.

Dated: Uniondale, New York
August 27, 2026

**FORCHELLI DEEGAN TERRANA LLP**
*Attorneys for Israel Schaya*

By: */s/Michael S. Amato*
Gerard R. Luckman
Michael S. Amato
Gabriella E. Botticelli
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553
Tel. (516) 248-1700
Fax (516) 248-1729
gluckman@forchellilw.com
mamato@forchellilaw.com
gbotticelli@forchellilaw.com

FORCHELLI DEEGAN TERRANA LLP
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553
Tel. No. (516) 248-1700
Fax No. (516) 750-6462
Gerard R. Luckman, Esq.
Michael S. Amato, Esq.
Gabriella E. Botticelli, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

TOYVATION LLC

Debtor.
-----------------------------------------------------------X

Chapter 11
Case No. 26-43344-ess

**MOTION OF ISRAEL SCHAYA FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING EXAMINATIONS AND DIRECTING PRODUCTION OF DOCUMENTS**

TO: THE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

Israel Schaya ("Schaya" or "Movant") by his counsel Forchelli Deegan Terrana LLP, as and for their motion (the "Motion") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of the order (the "Proposed Order") annexed hereto as Exhibit A, directing the attendance for examination and production of documents and information by Solomon Poller ("Poller") and Aron Landau ("Landau", together with Poller, collectively the "Witnesses").

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. § 1409. The principal statutory predicate for the relief requested herein is Bankruptcy Rule 2004.

## BACKGROUND

**The Debtor's Chapter 11 Case**

2. On July 9, 2026 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of title 11, United States Code (the "Bankruptcy Code") and thereafter has continued in possession and management of its business as a debtor-in-possession pursuant to Bankruptcy Code §§1107 and 1108.

3. On August 17, 2026 the Office of the U.S. Trustee for Region 2 (the "US Trustee") conducted the 341(a) Meeting of Creditors (the "341 Meeting") in the Debtor's chapter 11 case.

**Prepetition Arbitration**

4. Movant Israel Schaya was the sole financial investor in joint business ventures with Aron Landau ("Landau"). Movant invested approximately $4,000,000.00 dollars in various investments with Landau. Landau invested nothing. In addition, Movant personally lent Landau $300,000.00 to be used to acquire a personal residence, $420,000.00 to acquire a second home, and $375,000 for his personal living expenses in 2024.

5. Movant is a creditor and membership interest holder in Toyvation LLC (the "Debtor"). Following a breakdown in the relationship, the parties agreed to submit all disputes regarding all their shared business ventures to arbitration before a single arbitrator. Prior to the Petition Date, Movant and Landau were parties to an arbitration proceeding (the "Arbitration") pending before Arbitrator Abraham Roth (the "Arbitrator"). Each of the parties was represented by separate counsel. A true and correct copy of the Agreement to Submit to Arbitration, together with multiple extensions of the arbitration deadlines, is attached hereto as Exhibit "B".

6. The Arbitrator issued an Arbitration Award dated August 11, 2025 (the "Arbitration Award"). Pursuant to the Arbitration Award, the Arbitrator determined *inter alia*, that Landau owes Movant $1,628,572.60, and awarded Movant ownership of substantially all of the operating companies, all secured by Landau's interests in the real estate entities. Further, pursuant to the

Arbitration Award, Movant was awarded 100% ownership of Toyvation LLC. Prior to the Arbitration Award, Movant held not less than a 50% membership interest. A true and correct copy of the Arbitration Award is attached hereto as Exhibit "C".

7. Movant filed a special proceeding in the Supreme Court, County of Kings, styled *In the Matter of the Arbitration of Certain Controversies Between Israel Schaya and Aron Landau*, Ind. No.: 527483/25 (the "State Court Action").

8. After multiple motions, cross motions and related litigation, the Court entered an order or series orders on July 6, 2026 (the "Remand Order") denying the petition to confirm, vacating certain restraining orders and remanding the matter to the Arbitrator to consider and resolve outstanding issues identified by the Court. A true and correct copy of the State Court Order is attached hereto as Exhibit "D".

9. By separate Order dated July 10, 2026, the Supreme Court also referred the parties' contempt disputes and receivership motions to the Arbitrator (the "Referral Order"). A true and correct copy of the Referral Order is attached hereto as Exhibit "E".

10. Landau previously sought to halt the Arbitration by filing an emergency application before the Appellate Division, Second Department of the State of New York seeking an interim stay of the Remand Order. The Appellate Division denied that request for interim relief. A true and correct copy of the Appellate Division Order is attached hereto as Exhibit "F".

11. Rather than allow the arbitration process to continue, it appears that Landau orchestrated this *pro se* bankruptcy filing.

12. Upon information and belief, almost immediately after the Arbitration Award was issued, Landau engaged in a systematic effort to render the award uncollectable. On June 20, 2025 — the day after the Arbitrator emailed the draft award — Landau transferred his personal residence worth approximately $2,000,000 to joint ownership with his wife without consideration.

13. On August 12, 2025 — the day after the Arbitration Award was issued — Landau recorded a $450,000 mortgage against that same residence. Within three months, the proceeds of the mortgage were dissipated. Landau also emptied a company bank account containing over $50,000.

14. One of Landau's investment properties in Edison, New Jersey has been listed for sale and potentially is under contract. The Edison, New Jersey in which Landau holds a 50% membership interest is presently under contract and believed to be closing imminently — and in a detail that speaks for itself, the contract for that property was recorded on July 6, 2026 — the same day that the Supreme Court issued its Remand Order directing the Arbitrator to issue a final award. Once that closing occurs Landau's share of the sale proceeds will be distributed and dissipated consistent with his documented pattern, which is permanently beyond Movant's reach before any award can be collected. A true and correct copy of the Middlesex County Clerk Document Summary Sheet is attached hereto as Exhibit "G".

15. This bankruptcy filing is the latest step in the same pattern — not a good faith reorganization but a tactical delay designed to delay or completely derail the Arbitration.

**RELIEF REQUESTED**

16. Movant respectfully requests that this Court enter the Proposed Order authorizing the examination of each of the Witnesses pursuant to Bankruptcy Rule 2004 and Bankruptcy Code §1103(c)(3).

17. Movants further request that the Witnesses each be required to deliver to Movant's counsel true and complete copies of each of the documents set forth in Exhibit 1 to the Proposed Order annexed hereto.

**BASIS FOR RELIEF REQUESTED**

18. Bankruptcy Rule 2004 states, in pertinent part:

(a) Examination on Motion. On motion of any party in interest, the

> court may order the examination of any entity.
>
> (b) Scope of Examination. The examination of any entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to be formulation of a plan.

F.R.Bankr.Proc. 2004.

19. "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.,* 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citing *In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)).

20. Based upon the information contained in the Debtor's Schedules of Assets and Liabilities and SOFA (ECF Dckt. Nos. 9 and 10), Poller's testimony at the 341 Meeting, information learned during the pendency of the Arbitration, and conversations with the Debtor's counsel, the Movants respectfully submit that the Witnesses have information relating to property of the Debtor's estate, the administration of the Debtor's estate, and the Debtor's ability to successfully reorganize and emerge from chapter 11.

## **CONCLUSION**

21. Based upon the foregoing, the Movants respectfully request that the Court enter the Proposed Order, and require both the Witnesses to produce the documents set forth on Exhibit 1 to the Proposed Order annexed hereto and appear for an examination.

**NO PRIOR REQUEST**

22. No previous request for the same or similar relief has been made by the Movants to this or any other court.

**WHEREFORE**, the Movants respectfully request that the Court enter the Proposed Order directing: (a) the attendance for examination of each of the Witnesses; (b) the documents set forth on Exhibit 1 to the Proposed Order be delivered to Movants' counsel; and (c) such other and further relief as this Court deems just and proper.

Dated: Uniondale, New York
August 27, 2026

**FORCHELLI DEEGAN TERRANA LLP**
*Attorneys for Israel Schaya*

By: */s/ Michael S. Amato*
Gerard R. Luckman
Michael S. Amato
Gabriella E. Botticelli
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553
Tel. (516) 248-1700
Fax (516) 248-1729

# **Exhibit A**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

TOYVATION LLC

Debtor.
-----------------------------------------------------------X

Chapter 11
Case No. 26-43344ess

**ORDER GRANTING MOTION OF ISRAEL SCHAYA FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING EXAMINATIONS AND DIRECTING PRODUCTION OF DOCUMENTS**

This matter having come before this Court upon the motion of Israel Schaya, ("Schaya" or the "Movant"), by his counsel Forchelli Deegan Terrana LLP (the "Motion") seeking an Order, pursuant to Bankruptcy Rule 2004, directing Solomon Poller ("Poller") and Aron Landau ("Landau", together with Poller, collectively the "Witnesses") , to appear for examinations and provide testimony, and to produce for inspection and copying all those documents and information in its possession, custody or control listed on Schedule A to the Motion;

NOW, upon all pleadings and proceedings in this matter to date and good cause appearing therefore, it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, , that Poller and Landau hereby are directed to produce all those documents and information in their possession, custody or control as listed on Schedule A annexed hereto, to Forchelli Deegan Terrana LLP, Attn.: Gerard R. Luckman, Esq., counsel to Israel Schaya at their offices located at 333 Earle Ovington Blvd., Uniondale, New York 11553 within twenty-one (21) days of the date of this Order; and it is further

ORDERED, that Poller and Landau hereby are directed to appear at Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd., Uniondale, New York 11553 for examinations pursuant to subpoenas to be issued by Movants' counsel; and it is further

ORDERED, that the Witnesses shall present valid government issued photo identification in the form of a driver's license, passport, or state issued identification card to the court reporter before the commencement of the examination.

**SCHEDULE A TO 2004 EXAMINATION**

**DOCUMENTS TO BE PRODUCED**

**DEFINITIONS**

a. “All” and “each” shall be construed as all and each.

b. “Debtor” means Toyvation LLC

c. “Poller” means Solomon Poller.

d. “Landau” means Aron Landau

e. “Petition Date” means July 9, 2026

f. “State Court Action” means the special proceeding in the Supreme Court, County of Kings, styled *In the Matter of the Arbitration of Certain Controversies Between Israel Schaya and Aron Landau*, Ind. No.: 527483/25.

g. “Arbitration” means the arbitration proceeding (the “Arbitration”) pending before Arbitrator Abraham Roth.

h. “Arbitration Award” means the Arbitration Award dated August 11, 2025.

i. “1925 N Brunswick Bankruptcy Proceeding” means the chapter 11 bankruptcy case pending in the United States Bankruptcy Court, EDNY, Case No: 26-43382-jmm.

j. “Petition” means the Petition filed in this bankruptcy case on July 9, 2026 (ECF Dckt. No.1).

k. “Schedules” means the Schedules filed in this bankruptcy case on August 16, 2026 (ECF Dckt. No. 9).

l. “SOFA” means the Statement of Financial Affairs filed in this bankruptcy case on August 16, 2026 (ECF Dckt. No. 10).

m. “Communication” means both oral and written communications and shall include, without limitation: (i) documents and/or notes relating to meetings, conversations, conferences and telephone conversations, (ii) all letters, telegrams, mailgrams, telecopier or facsimile transmissions, messages and/or posts placed on any social media website, tweets, Facebook postings, e-mail, text messages, instant messages, SMS and MMS messages, and other electronic communications and word processing documents.

n. “Concerning” means and includes supporting, embodying, setting forth, relating to, referring to, responding to, alluding to, commenting on, in respect of, about, describing, regarding, discussing, showing, mentioning, analyzing, evidencing, reflecting constituting or in any manner arising from or in connection with, including but not limited to documents or information relating to the Debtor or upon which you rely or may rely on to support any claims that may be filed by or on behalf of Debtor in this case.

o. “Document” means any writing (whether handwritten, typed, printed or otherwise made), drawing, graph, chart, photograph (negatives or prints), phono-record, or electronic or mechanical matter or computer data or records (including microfilm of any kind or nature, tape, recordings or tape recordings and e-mail), or other data compilations from which information can be obtained or are or can be rendered subject to visual inspection or auditory examination or reproduction, and shall include, without limiting the generality of the foregoing, originals, copies and drafts of all contracts, correspondence, telegrams, teletypes, agreements, studies, reports, price lists, quotations, memoranda, reports and recordings of telephone or other conversations, or of conferences or meetings, minutes, journal entries, notes and notations (whether separate or added to another document), desk calendars, appointment books, diaries, work papers, summaries, opinions, analyses, evaluations, agendas, bulletins, brochures, manuals, schedules,

books, accounts, ledgers, invoices, bills of lading, transcripts, newspaper clippings, and all other writings or papers of any kind, and information stored in computers or other data storage or processing equipment, which are or were in Debtor's possession, custody or control, or are known by Debtor to exist or to have existed. ***The term "document" also includes "Electronically Stored Information" or "ESI," as defined below***.

p. "Electronically Stored Information" or "ESI" includes, but is not limited to, e-mails and attachments, voice mail, instant messaging and other electronic communications, word processing documents, text files, hard drives, spreadsheets, graphics, audio and video files, databases, calendars, telephone logs, transaction logs, internet usage files, offline storage or information stored on removable media, information contained on laptops or other portable devices and network access information and backup materials, and Native Files as defined below.

q. "Person" means any natural person or any business, legal or governmental entity or association.

r. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

s. The use of the singular form of any word includes the plural and vice versa.

**Time Period**

Unless otherwise specified, this Notice embraces all events and documents written, produced, transmitted or received during the period from July 9, 2020 through the present.

**SCHEDULE A**

1. All documents and communications concerning or relating to any and all transfers of any money or property with a value in excess of $600.00 made within the six (6) years prior to the Petition Date.

2. All documents and communications concerning or relating to any and all transfers made to or for the benefit of the Poller, his spouse, family members, relatives, related parties or any entities that he may own or have an interest in.

3. All documents and communications concerning or relating to any and all transfers made to or for the benefit of Landau, his family members, relatives, related parties or any entities that he may own or have an interest in.

4. All documents and communications concerning or relating to any and all assets or property owned or held by the Debtor.

5. All documents and communications concerning or relating to the formation or organization of the Debtor including, but not limited to corporate documents, articles of organization, operating agreement, minutes, resolutions or designations.

6. All documents or communications concerning or relating to the designation or appointment of Poller as Managing Member of the Debtor, including, but not limited to corporate documents, articles of organization, operating agreement, minutes, resolutions or designations.

7. All documents or communications concerning or relating to the determination for the Debtor to file for bankruptcy, including, but not limited to corporate documents, operating agreement, minutes, resolutions or designations.

8. All documents or communications by and between Poller and Landau concerning or relating to the determination for the Debtor to file for bankruptcy.

9. All documents and communications concerning or relating to Debtor's ownership structure, income, assets, and liabilities including but not limited to tax returns, audited or unaudited financial statements, balance sheets, general ledgers, check registers, cash receipts journals, and bank statements.

10. All documents and communications concerning or relating to the "finished goods" identified in Paragraph 21 of the Schedules.

11. All documents and communications concerning or relating to the cause(s) of action identified in Paragraph 75 of the Schedules.

12. A copy of any retainer or engagement agreement entered into between the Debtor and/or Poller and counsel relating to bankruptcy, restructuring and/or the Chapter 11 case.

13. All documents and communications concerning or relating to any payments made to or received by Poller in connection with the filing of the Petition and the bankruptcy case, including but not limited to the source of those funds.

14. All documents and communications by and between Landau and Solomon Rosengarten, Esq. concerning or relating to the retention of Rosengarten as counsel in this bankruptcy case, including but not limited to any retainer agreement, engagement letter, or fee arrangement.

15. All documents and communications by and between Landau and Blank Rome LLP concerning or relating to the filing of this bankruptcy case.

16. All documents and communications concerning or relating to any claim by Landau or the Debtor that any amount is owed to Landau or the Debtor by Schaya, including but

not limited to any invoices, loan documents, agreements, or accounting records supporting such claim.

# **Exhibit B**

**AGREEMENT TO SUBMIT**
**TO ARBITRATION**

**AGREEMENT** made this 10th day of April, 2025 by and between Israel Schaya located at 1636 51st Street Brooklyn, NY 11204 and Aron landau residing at 5221 16th Ave Brooklyn, NY 11204.

1. **Issues and Disputes/Submission:** All outstanding business issues between Israel Schaya & Aron Landau and their companies.

2. **Date/Place/Time:** The Arbitrator, shall have the power and authority, in his sole and absolute discretion, to (i) set the date, place and time for hearing(s) and shall advise the parties of same in writing; and (ii) close any hearing or adjourn or postpone any hearing from time to time, and to proceed ex-parte and take testimony and evidence if either party shall fail to attend a scheduled hearing. Hearings may be held on Sundays or legal holidays.

3. **Representation:** Any party may be represented by an attorney at anytime or any portion of the proceedings. A party intending to be represented by an attorney shall notify the other party and the Arbitrator, in writing, at least three (3) days prior to a scheduled hearing.

4. **Stenographic Record:** There shall be no stenographic record of the hearing(s). Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements in advance of the hearing. The requesting party shall pay the cost of the record. If the transcript is agreed by the parties to be, or determined by the Arbitrator to be, the official record of the proceeding, it must be made available to the arbitrator and to the other parties for inspection, at a date, time, and place determined by the Arbitrator.

5. **Employment of Professionals:** The Arbitrator shall have the power and authority to employ legal counsel, an accountant (or in the event Arbitrator is an accountant, another accountant, whether employed by the Arbitrator or otherwise), and/or other professionals which he, in his sole and absolute discretion, may deem necessary to assist him in understanding and deciding any of the issues and to apportion the costs for said person(s) as he deems just and proper.

6. **Legal Principles:** In rendering his determinations, the Arbitrator may apply, among other laws and/or principles, Talmudic law, halachah, common law, statutory law, or other principles or standards, which, in his sole and absolute discretion, he deems appropriate or applicable to the facts and circumstances.

7. **Evidence:** The Arbitrator is not bound by rules concerning the admissibility, competency, relevancy, materiality, weight and/or sufficiency of evidence and may in his sole

Case 1-26-43344-ess Doc 13 Filed 08/27/26 Entered 08/27/26 13:30:40

and absolute discretion take as evidence any testimony whether presented orally in person and/or by telephone, by affidavit, by letter, by electronic mail or any other manner the Arbitrator may deem appropriate. The Arbitrator may, in his sole and absolute discretion reject any submission or proffer of testimony or evidence.

8. **<u>Discovery</u>:** The Arbitrator shall have the power and authority to direct the production of any books or records in the possession, custody or control of any party and to order that any party provide the other party with access to and be permitted to inspect and photocopy any books and records.

9. **<u>Interim Measures</u>:** The Arbitrator shall have the power and authority to order and direct any interim remedy or relief relating to the matter in dispute, including measures for the conservation of any property.

10. **<u>Determinations</u>:** The Arbitrator's determinations shall be in writing and served on all parties and counsel, if any. The determinations shall be signed by the Arbitrator but need not be notarized or acknowledged. The determinations shall be final and binding on all parties and all parties shall faithfully abide by and perform in accordance with the determinations. Judgment upon the determinations may be entered in a court of competent jurisdiction. The determinations may grant any relief and remedy, including equitable relief, that the Arbitrator deems just and proper. The Arbitrator may, within ten (10) days after service of determinations upon the parties, make any corrections in the determinations such as errors in computation, clerical or typographical errors and the like or correct any omission in the Award.

11. **<u>Costs</u>:** All expenses of the arbitration proceedings, including the Arbitrator's fees which shall be at the rate of $650.00 per hour, shall be borne equally between the parties, unless the Arbitrator assesses such expenses or any part thereof against any specified party. The Arbitrator may require the parties to deposit in advance of any hearing such sums of money as he deems necessary to cover the expense of the arbitration, including the Arbitrator's fee, if any, and shall render an
accounting to the parties and return any unexpended balance at the conclusion of the proceedings.

12. **<u>Notices</u>:** Any notice, request, demand, or other communication (collectively "Notice") given, or required to be given, in connection with, resulting from and/or arising under this Agreement and/or the arbitration proceedings including, but not limited to, the Arbitrator's determinations, shall be in writing and shall be sent by overnight delivery via a commercial courier providing overnight delivery service (FedEx, UPS, and the like) to the party to receive said Notice at the address set forth above and shall be deemed to have been given within one (1) Business Day after it is dispatched to such delivery service. Any party may, by giving Notice to the other and the

Arbitrator, in the manner set forth above, change the address to which a Notice shall be sent to it, provided that any such change of address shall be effective three (3) Business Days after it is deemed given, as set forth above.

13. **Arbitrator's Liability:** The Arbitrator shall not be liable to any of the parties for acts and conduct of the Arbitrator in any way connected with the arbitration proceedings. Each party hereby, jointly and severally, shall indemnify, save and hold harmless the Arbitrator, from and against any and all costs, losses, liabilities, damages, lawsuits, din torah, deficiencies, claims and expenses, including, without limitation, interest, penalties, additions, travel expenses, wages/fees allocable to loss of employment time, at the Arbitrator's standard hourly fee for time spent in connection with the above, attorneys' fees and/or fees for any "Toen", all amounts paid in investigation, defense or settlement of any of the foregoing, whether or not arising out of third-party claims, including but not limited to, by any party to this Agreement, incurred by and/or issued against the Arbitrator, in connection with or arising out of or resulting from his acting as the arbitrator in the aforesaid arbitration proceedings.

14. **Agreement Validation:** אני מודה בהודאת בעל דין שהוא כמאה עדים, שכל תנאי הוא במעכשיו וקנינן מיני' כחומר כל תנאים וקנינים העשויים כתיקון חכמים וכמשפטי התנאים דבני גד ובני ראובן, וכן כל דבר שקיבלתי עלי הוא בהתחייבות גמור או במחילה גמורה, ואפילו נמצא בשטר לשון שמשמעותה הפשוטה אינה לשון של התחייבות או מחילה, הכונה והפירוש שכיונתי בלשון זה הוא להתחייבות או מחילה גמורה, וכן כל התחייבות או מחילה שנעשה הי' בקנין גמור אגב סודר או בכל קנין המועיל בבית דין חשוב ומעכשיו ובאופן המועיל שאין בו משום אסמכתא, וכן כל התחייבות או מחילה שעשיתי הי' ברצון גמור בלי שום אונס ובלי תנאי חוץ מן התנאים המפורשים בשטר, ואני מבטל כל מודעא וכל מודעא למודעא עד עולם, והאמנתיו בכל טענה ומענה בנוגע למה שכתב בשטר.

- This Arbitration Agreement will expire 3 weeks after Passover at the end of the day May 12, 2025.

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the day, date and year first above written.

[redacted] [redacted]

Israel Schaya Aron Landau

[redacted]

Abraham Roth, Arbitrador

# Exhibit C

**ARBITRATION AWARD**

**Arbitrator:** Abraham Roth
**Date of Award:** August 11, 2025
**Parties:**

- Aron Landau residing at 5221 16th Ave Brooklyn, NY 11204 (Landau)
- Israel Schaya residing at 1636 51st Street Brooklyn, NY 11204 (Schaya)
- All their jointly owned companies including but not limited to (i) Toyvation LLC, (ii) BB Supplier Inc, (iii) MHB Ventures LLC, (iv) 54 Palisade LLC, and (v) 1925 N Brunswick LLC.

## 1. Background

This arbitration was conducted privately and voluntarily by agreement of both parties. The arbitrator was jointly selected by the parties and accepted the appointment on April 10, 2025, which arbitration agreement was extended/amended by agreements dated May 8, 2025, May 26, 2025, June 20, 2025, June 25, 2025, July 1, 2025, July 9, 2025, July 16, 2025, July 23, 2025 and August 4, 2025.

The arbitration took place on various dates, and both parties had the full opportunity to present their positions.

## 2. Findings and Decisions

1. Landau owes Schaya the total sum of One Million Six Hundred Twenty-Eight Thousand and Five Hundred Seventy-Two Dollars ($1,628,572.60) (the "Money Owed"). (The Money Owed consists of $1,561,500.00 in principal and $67,072.60 in accrued "interest" according to the *heter iska* provision in the real estate agreement dated June 17, 2024).

2. This award is final on all issues set forth herein. There is one additional dispute in the amount of approximately $450,000 related to an *iska* arrangement. This dispute is not related to the matters addressed here or the Money Owed but is being addressed in accordance to the arbitration agreement dated April 10, 2025 and has not yet been decided. Mr. Landau requested that a meeting be scheduled for August 18, 2025 to discuss this dispute. Accordingly, I hereby set that date to discuss this matter, and the matter will be decided separately.

3. The loan from TD Bank in the principal amount of $96,642.32, identified as Loan No. 004-00001-4925616-9001, shall be the joint obligation of both parties and shall be repaid by Landau and Schaya in equal shares.

4. The loan from Citizens Bank in the principal amount of $70,701.00 shall be the sole responsibility of Schaya, who shall remain exclusively liable for its repayment. $11,889.00 shall be set off from the Money Owed set forth above.

5. The Money Owed shall be paid in sixty (60) equal monthly installments with each installment payment due on the first calendar day of each successive month commencing from the date of this award.

6. If Landau fails to timely pay any two monthly payments set forth above, the entire remaining balance of the Money Owed shall become immediately due and payable.

7. The real estate agreement dated June 17, 2024, between Schaya and Landau, relating to real estate ventures, shall remain in full force and effect, except as expressly modified below: (i) in paragraph 2, the phrase "decided amount" shall be replaced with "market value as determined by an MAI-certified appraiser", (ii) the provision stating: “Cash payment 15% APR for the year 2024, 20%-year 2025, 25% from year 2026 and on” shall be deleted in its entirety and replaced with the following: “Cash payment shall accrue interest at a fixed rate of 15% per annum (APR), regardless of year, which was structured with a valid *heter iska* under Jewish law.” Further, the principal balance due on the loan set forth in that real estate agreement is $370,000, which amount is included in the Money Owed.

8. Real properties located at (i) 54 Palisade Road, Linden, New Jersey 07036 and (ii) 418 Elmwood Terrace, Linden, New Jersey 07036 (collectively the “Linden Properties”), in which title to the properties are presently in the name Landau, title was only held by Landau in trust on behalf of Schaya and Schaya is owner of the Linden Properties in all respects. Landau should promptly transfer title in the Linden Properties to Schaya or to entity as he directs. Further, all membership and/or ownership interests in 54 Palisade LLC and MHB Ventures LLC, companies that manage the Linden Properties are the exclusive property of Schaya. Landau shall have no ownership interest, legal or equitable, in either of those companies or in the membership interests thereof. Notwithstanding the above, Schaya shall be solely responsible for paying the monthly mortgage payments on the Linden Properties referenced above. Each monthly mortgage payment shall be made on or before the fifteenth (15th) calendar day of each month. If Schaya fails to timely pay any two monthly mortgage payments set forth above before title was transferred, then Landau can demand full payment for the entire remaining balance of the mortgage immediately.

9. In accordance with the real estate agreement dated June 17, 2024, the parties are members of an entity known as 1925 N Brunswick LLC, which owns the real property located at 1925 4th Street, North Brunswick, New Jersey, of which Schaya owns a seventy-five percent membership interest (50% as the Money Partner plus 25% as the sweat equity partner totaling 75%) and Landau owns a twenty-five percent membership interest (25% as the sweat equity partner), subject to that percentage changing in accordance with the terms of the agreement. Landau’s membership interest in 1925 N Brunswick LLC is hereby pledged and collateralized in favor of Schaya as security for the full and timely payment of the Money Owed as set forth above. This collateral interest shall remain in effect until such time as Landau has paid the full amount owed to Schaya as set forth above. If Landau fails to timely pay any portion of the Money Owed, then based upon a present market value of Landau’s interest, as determined by an MAI-certified appraiser, Landau’s membership interest in 1925 N Brunswick LLC shall be reduced and turned-over to Schaya in payment of that amount of Money Owed. In addition, any other interest owned by Landau in real property, whether

directly or through a company, shall serve as additional collateral for the full and timely payment of the Money Owed as set forth above.

10. All assets held by either party, or by third parties and designated or labeled for purposes of recognition as “TechWave” are and shall be the exclusive property of Schaya. Landau shall have no ownership interest, claim, or entitlement in or to any such TechWave related assets.

11. Since Landau did not take salary in 2024, $75,000 is considered to be payable from BB Supplier Inc. and/or Toyvation LLC to Landau. However, this payable cannot be used to offset any loans and can only be a claim against BB Supplier Inc. and/or Toyvation LLC assets.

12. All assets of BB Supplier Inc. and/or Toyvation LLC belong to Schaya and all liabilities prior to the date of this award that were disclosed during the arbitration (which are as follows: (i) miscellaneous vendors are owed $81,956.50 and Signal Logistics is owed $89,515), shall be Schaya’s responsibility except for the TD Bank and Citizens loan set forth above as well as the salary set forth in paragraph 11 above. The assets of BB Supplier Inc. and/or Toyvation LLC shall be used to pay the assumed liabilities set forth in this paragraph.

13. All ownership interest in BB Supplier Inc., and all membership interest in Toyvation LLC, are and shall be the exclusive property of Schaya. Landau shall have no ownership interest, claim, or entitlement in or to either company.

14. Landau shall be obligated to complete the following transition and transfer obligations in favor of a new entity to be formed by Schaya (the “New Entity”):

A. Transfer all vendor contacts and business introductions,
B. Transfer full ownership and administrative access to the following Amazon accounts: Toyvation, Mountain Toys, and the Trump account.
C. Provide and transfer all login credentials and administrative access, including but not limited to full access to the Google Admin Panel governing all past Gmail domain accounts associated with the business operations.
D. Transfer all intellectual property, addressed during the arbitration, including but not limited to trademarks, patents, copyrights, trade secrets, and any proprietary materials, to the New Entity.

Landau shall complete the above transition obligations within sixty (60) calendar days of the issuance of this Award. Failure to timely comply with any portion of this paragraph shall result in damages of Ten Thousand Dollars ($10,000.00) payable by Landau to Schaya.

15. All tax liabilities and losses relating to BB Supplier Inc for the tax years 2021, 2022, 2023, 2024, 2025 and on, and Toyvation LLC from inception, shall be the sole responsibility of Schaya.

16. For a period of sixty (60) calendar days following the issuance of this Award, Landau shall have the option to force, at Schaya’s sole option, either (i) Landau’s purchase Schaya’s

membership interest in 1925 N Brunswick LLC or (ii) Schaya's purchase of Landaus membership interest in 1925 N. Brunswick LLC The purchase price for said membership interest shall be determined by calculating the average of two (2) independent valuations performed by MAI-certified appraisers, with one appraiser selected by each party. The cost of both appraisals shall be shared equally by the parties. As a condition precedent to exercising this option, Landau must pay in full the Money Owed as set forth above. If Landau does not timely exercise the option within the sixty-day period or fails to pay the Money Owed in full within the sixty-day period, the option shall expire automatically and be of no further force or effect.

17. The non-compete provision contained in the Agreement dated July 4, 2019 between the parties shall remain in full force and effect, and the parties shall continue to be bound by its terms.

---

## 3. Release of Claims

Both parties agree that, once the above terms are completed, no further claims will be pursued in relation to this dispute.

---

## 4. Award

This Award is final and binding and may be entered as a court judgement for enforcement.

Signed,

[redacted]___________

**Abraham Roth,**
Arbitrator
Date: August 11, 2025

Served on Parties by email and FedEx

# SUPPLEMENTAL FINAL ARBITRATION AWARD

**Arbitrator**: Abraham Roth

**Date of Award:** September 12, 2025

**Parties:** Aron Landau residing at 5221 16th Ave Brooklyn, NY 11204 (Landau)

Israel Schaya residing at 1636 51st Street Brooklyn, NY 11204 (Schaya)

All their jointly owned companies including but not limited to (i) Toyvation LLC, (ii) BB Supplier Inc, (iii) MHB Ventures LLC, (iv) 54 Palisade LLC, and (v) 1925 N Brunswick LLC.

## 1. Background

This arbitration was conducted privately and voluntarily by agreement of both parties. The arbitrator was jointly selected by the parties and accepted the appointment on April 10, 2025, which arbitration agreement was extended/amended by agreements dated May 8, 2025, May 26, 2025, June 20, 2025, June 25, 2025, July 1, 2025, July 9, 2025, July 16, 2025, July 23, 2025, August 4, 2025 and September 3, 2025.

The arbitration took place on various dates, and both parties had the full opportunity to present their positions.

## 2. Findings and Decisions

As noted in paragraph 2 of my Award dated August 11, 2025, one claim remained open for further determination concerning a dispute related to an *iska* arrangement. I received additional testimony and submissions from the parties. In the course of these proceedings, Israel Schaya agreed to waive some of his claims, and I have now fully considered the matter. I hereby determine that Aron Landau owes Israel Schaya the additional sum of $89,738.49. This Award resolves the only claim expressly left open in my August 11, 2025 Award.

After accounting for the Award dated August 11 in the amount of $1,628,572.60, together with the Award issued today in the amount of $89,738.49, the combined amount is $1,718,311.09. Accordingly, Mr. Landau owes Mr. Schaya the aggregate sum of $1,718,311.09, reflecting both final awards.

Subsequent to issuing my August 11, 2025 Award, Aron Landau moved to reargue that determination, alleging various errors, including accounting and mathematical inaccuracies. After careful review and consideration, I find that my August 11, 2025 Award is correct and final in all respects as to the matters determined therein. That Award remains fully binding and is not changed or reopened.

Accordingly, the August 11, 2025 Award stands as the final determination of all claims and counterclaims addressed therein, and today's Award is the final determination of the sole outstanding claim. Together, they constitute the full and final resolution of all claims and counter claims raises in this arbitration. No claims remain open, and this matter is now concluded in its entirety.

**3. Award**

This Award is final and binding and may be entered as a court judgement for enforcement.

Signed,

[redacted] ______________

**Abraham Roth,**

Arbitrator

Date: September 12, 2025

Served on Parties by email and FedEx

# **Exhibit D**

At an IAS Term, Part 9, of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 6th day of July, 2026.

P R E S E N T:

HON. STEVEN Z. MOSTOFSKY,
Justice.

----------------------------------------------------------------------X

In the Matter of the Arbitration of Certain Controversies Between,

ISRAEL SCHAYA,

Petitioner,

-and-

Index No. 527483/25

ARON LANDAU

Respondent,

-and-

NECHUMA LANDAU, 1905 FLUSHING REALTY LLC, MAYER LEIFER A/K/A MAYER DAVID LEIFER, AND FLAGSTAR BANK, NA,

Nominal Respondents.

----------------------------------------------------------------------X

| The following e-filed papers read herein: | NYSCEF Nos.: |
| --- | --- |
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed | 2-1, 42, 30, 94, 99, 17, 19, 20, 21, 57, 71, 78, 101, 103, 139, 142 |
| Opposing Affidavits (Affirmations) | 96, 101, 103, 139, 142 |
| Affidavits/ Affirmations in Reply | 148-151 |

Upon the foregoing papers, petitioner Israel Schaya moves (Motion Sequence [MS] # 1) for an order and judgment 1) pursuant to CPLR 7510, confirming the subject arbitration awards; 2) pursuant to CPLR 7514 directing judgment to be entered upon the

confirmed arbitration awards; and 3) awarding petitioner interest, costs, disbursements, and attorneys' fees.

By separate motion by order to show cause (MS # 2), petitioner moves for a preliminary injunction enjoining certain actions and conduct by respondent Aron Landau.

By order to show cause (MS # 4), respondent moves for a preliminary injunction enjoining certain actions and conduct by petitioner.

Respondent cross-moves (MS # 5) for an order 1) dismissing petitioner's verified amended petition under CPLR 404 (a), 3211, 7510 and the court's inherent authority based on the court's lack of subject-matter jurisdiction to review a nonfinal arbitration award and petitioner's failure to name necessary parties; and dismissing all claims against nominal respondent Nechuma Landau; or 2) alternatively, vacating the arbitration awards under CPLR 7506 (a), (c), and (d) and 7511 (b) (1) (i), (iii) and (iv).

## Background

This proceeding stems from a disagreement between petitioner and respondent over the dissolution of a series of joint ventures involving toy and PPE businesses and real property investments. On April 10, 2025, petitioner and respondent executed an agreement to submit to arbitration "[a]ll outstanding business issues between [petitioner and respondent] and their companies." The agreement provided, among other things, that:

> "[T]he Arbitrator may apply, among other laws and/or principles, Talmudic law, halachah, common law, statutory law, or other principles or standards, which, in his sole and absolute discretion, he deems appropriate or applicable to the facts and circumstances" and that "the Arbitrator is not bound by rules concerning the admissibility, competency, relevancy, materiality, weight and/or sufficiency of evidence and may in

> his sole and absolute discretion take as evidence any testimony whether presented orally in person and/or by telephone, by affidavit, by letter, by electronic mail or any other manner the Arbitrator may deem appropriate" and "may, in his sole and absolute discretion reject any submission or proffer of testimony or evidence."

Although the arbitration agreement provided that it would expire May 12, 2025, the parties agreed to extensions. In one such extension agreement, executed on June 20, 2025, the arbitration agreement was amended to provide as follows:

> "In addition, the parties represent that they are the sole members, shareholders, and/or owners of the following companies: MHB Products Inc, Omni Group Global LLC, Toyvation LLC, Gleeporte Toys LLC, Gleeporte Toys Trust, Real Comfort Trading Inc, BB Supplier Inc, Luxie Products LLC, Gleeporte Toys Trust, MHB Ventures LLC, 54 Palisade LLC,1925 N Brunswick LLC, & Linko Supplies Inc.
>
> "Both parties hereby extend the rights and powers of the arbitrator, which are set forth in the arbitration agreement, to specifically include the rights and powers to grant a final arbitration award as to the companies set forth above.
>
> "Israel Schaya bought out OmniVentures NYLLC as of January 1, 2021"

The parties thereafter agreed to several more extensions of the arbitration agreement, with the final expiration date of September 3, 2025.

On August 11, 2025, the Arbitrator issued an award deciding several issues between the parties (initial award). The initial award made the following "Findings and Decisions:"

> 1. Landau owes Schaya the total sum of One Million Six Hundred Twenty-Eight Thousand and Five Hundred Seventy-Two Dollars ($1,628,572.60) (the "Money Owed"). (The Money Owed consists of $1,561,500.00 in principal and $67,072.60 in accrued "interest" according to the heter iska provision in the real estate agreement dated June 17, 2024).

2. This award is final on all issues set forth herein. There is one additional dispute in the amount of approximately $450,000 related to an iska arrangement. This dispute is not related to the matters addressed here or the Money Owed but is being addressed in accordance to the arbitration agreement dated April 10, 2025 and has not yet been decided. Mr. Landau requested that a meeting be scheduled for August 18, 2025 to discuss this dispute. Accordingly, I hereby set that date to discuss this matter, and the matter will be decided separately.

3. The loan from TD Bank in the principal amount of $96,642.32, identified as Loan No. 004 00001-4925616-9001, shall be the joint obligation of both parties and shall be repaid by Landau and Schaya in equal shares.

4. The loan from Citizens Bank in the principal amount of $70,701.00 shall be the sole responsibility of Schaya, who shall remain exclusively liable for its repayment. $11,889.00 shall be set off from the Money Owed set forth above.

5. The Money Owed shall be paid in sixty (60) equal monthly installments with each installment payment due on the first calendar day of each successive month commencing from the date of this award.

6. If Landau fails to timely pay any two monthly payments set forth above, the entire remaining balance of the Money Owed shall become immediately due and payable.

7. The real estate agreement dated June 17, 2024, between Schaya and Landau, relating to real estate ventures, shall remain in full force and effect, except as expressly modified below: (i) in paragraph 2, the phrase "decided amount" shall be replaced with "market value as determined by an MAI-certified appraiser", (ii) the provision stating: "Cash payment 15% APR for the year 2024, 20%-year 2025, 25% from year 2026 and on" shall be deleted in its entirety and replaced with the following: "Cash payment shall accrue interest at a fixed rate of 15% per annum (APR), regardless of year, which was structured with a valid heter iska under Jewish law." Further, the principal balance due on the loan set forth in that real estate

agreement is $370,000, which amount is included in the Money Owed.

8. Real properties located at (i) 54 Palisade Road, Linden, New Jersey 07036 and (ii) 418 Elmwood Terrace, Linden, New Jersey 07036 (collectively the "Linden Properties"), in which title to the properties are presently in the name Landau, title was only held by Landau in trust on behalf of Schaya and Schaya is owner of the Linden Properties in all respects.
Landau should promptly transfer title in the Linden Properties to Schaya or to entity as he directs. Further, all membership and/or ownership interests in 54 Palisade LLC and MHB Ventures LLC, companies that manage the Linden Properties are the exclusive property of Schaya. Landau shall have no ownership interest, legal or equitable, in either of those companies or in the membership interests thereof. Notwithstanding the above, Schaya shall be solely responsible for paying the monthly mortgage payments on the Linden Properties referenced above. Each monthly mortgage payment shall be made on or before the fifteenth (15th) calendar day of each month. If Schaya fails to timely pay any two monthly mortgage payments set forth above before title was transferred, then Landau can demand full payment for the entire remaining balance of the mortgage immediately.

9. In accordance with the real estate agreement dated June 17, 2024, the parties are members of an entity known as 1925 N Brunswick LLC, which owns the real property located at 1925 4th Street, North Brunswick, New Jersey, of which Schaya owns a seventy-five percent membership interest (50% as the Money Partner plus 25% as the sweat equity partner totaling 75%) and Landau owns a twenty-five percent membership interest (25% as the sweat equity partner), subject to that percentage changing in accordance with the terms of the agreement. Landau's membership interest in 1925 N Brunswick LLC is hereby pledged and collateralized in favor of Schaya as security for the full and timely payment of the Money Owed as set forth above. This collateral interest shall remain in effect until such time as Landau has paid the full amount owed to Schaya as set forth above. If Landau fails to timely pay any portion of the Money Owed, then based upon a present market value of Landau's interest, as determined by an MAI-certified appraiser, Landau's membership interest in

1925 N Brunswick LLC shall be reduced and turned-over to Schaya in payment of that amount of Money Owed. In addition, any other interest owned by Landau in real property, whether directly or through a company, shall serve as additional collateral for the full and timely payment of the Money Owed as set forth above.

10. All assets held by either party, or by third parties and designated or labeled for purposes of recognition as "TechWave" are and shall be the exclusive property of Schaya. Landau shall have no ownership interest, claim, or entitlement in or to any such TechWave related assets.

11. Since Landau did not take salary in 2024, $75,000 is considered to be payable from BB Supplier Inc. and/or Toyvation LLC to Landau. However, this payable cannot be used to offset any loans and can only be a claim against BB Supplier Inc. and/or Toyvation LLC assets.

12. All assets of BB Supplier Inc. and/or Toyvation LLC belong to Schaya and all liabilities prior to the date of this award that were disclosed during the arbitration (which are as follows: (i) miscellaneous vendors are owed $81,956.50 and Signal Logistics is owed $89,515), shall be Schaya's responsibility except for the TD Bank and Citizens loan set forth above as well as the salary set forth in paragraph 11 above. The assets of BB Supplier Inc. and/or Toyvation LLC shall be used to pay the assumed liabilities set forth in this paragraph.

13. All ownership interest in BB Supplier Inc., and all membership interest in Toyvation LLC, are and shall be the exclusive property of Schaya. Landau shall have no ownership interest, claim, or entitlement in or to either company.

14. Landau shall be obligated to complete the following transition and transfer obligations in favor of a new entity to be formed by Schaya (the "New Entity"):

A. Transfer all vendor contacts and business introductions,

B. Transfer full ownership and administrative access to the following Amazon accounts: Toyvation, Mountain Toys, and the Trump account.

C. Provide and transfer all login credentials and administrative access, including but not limited to full access to the Google Admin Panel governing all past Gmail domain accounts associated with the business operations.

D. Transfer all intellectual property, addressed during the arbitration, including but not limited to trademarks, patents, copyrights, trade secrets, and any proprietary materials, to the New Entity.

Landau shall complete the above transition obligations within sixty (60) calendar days of the issuance of this Award. Failure to timely comply with any portion of this paragraph shall result in damages of Ten Thousand Dollars ($10,000.00) payable by Landau to Schaya.

15. All tax liabilities and losses relating to BB Supplier Inc for the tax years 2021, 2022, 2023, 2024, 2025 and on, and Toyvation LLC from inception, shall be the sole responsibility of Schaya.

16. For a period of sixty (60) calendar days following the issuance of this Award, Landau shall have the option to force, at Schaya's sole option, either (i) Landau's purchase Schaya's membership interest in 1925 N Brunswick LLC or (ii) Schaya's purchase of Landaus membership interest in 1925 N. Brunswick LLC The purchase price for said membership interest shall be determined by calculating the average of two (2) independent valuations performed by MAI-certified appraisers, with one appraiser selected by each party. The cost of both appraisals shall be shared equally by the parties. As a condition precedent to exercising this option, Landau must pay in full the Money Owed as set forth above. If Landau does not timely exercise the option within the sixty-day period or fails to pay the Money Owed in full within the sixty-day period, the option shall expire automatically and be of no further force or effect.

> 17. The non-compete provision contained in the Agreement dated July 4, 2019 between the parties shall remain in full force and effect, and the parties shall continue to be bound by its terms.

A second award with regard to the deferred dispute involving the "iska arrangement" was issued on September 12, 2025 (supplemental award). The instant proceeding to confirm the initial award was commenced by the filing of a notice of petition and petition on August 14, 2025. Petitioner thereafter filed an amended notice of petition and amended petition to confirm the initial and supplemental award.

**Discussion**

The court will first address respondent's cross motion to vacate the awards, the determination of which will also resolve the main motion to confirm (*see* CPLR 7510 [a court "shall confirm an award upon application of a party . . . unless the award is vacated or modified upon a ground specified in [CPLR 7511];" CPLR 7514 [a] [where no grounds specified in CPLR 7511 exist, a "judgment shall be entered upon the confirmation of an award"]).

"'[J]udicial review of arbitration awards is extremely limited'" (*Matter of Richardson v Markovich*, 227 AD3d 999, 1000 [2d Dept 2024], quoting *Matter of Briscoe Protective, LLC v North Fork Surgery Ctr., LLC*, 215 AD3d 956, 957 [2d Dept 2023]). "Under CPLR 7511, an award may be vacated only if (1) the rights of a party were prejudiced by corruption, fraud or misconduct in procuring the award, or by the partiality of the arbitrator; (2) the arbitrator exceeded his or her power or failed to make a final and definite award; or (3) the arbitration suffered from an unwaived procedural defect"

(*Hackett v Milbank, Tweed, Hadley & McCloy*, 86 NY2d 146, 154-155 [1995]). "A party seeking to overturn an arbitration award bears a heavy burden and must establish a ground for vacatur by clear and convincing evidence" (*Matter of Douglas Elliman of LI, LLC v O'Callaghan*, 220 AD3d 945, 947 [2d Dept 2023] [internal quotation marks omitted]; *see Matter of Dluhy v Sive, Paget & Riesel, P.C.*, 220 AD3d 659, 659 [2d Dept 2023]). "Even where the arbitrator makes a mistake of fact or law, or disregards the plain words of the parties' agreement, the award is not subject to vacatur 'unless the court concludes that it is totally irrational or violative of a strong public policy' and thus in excess of the arbitrator's powers" (*Hackett*, 86 NY2d at 155, quoting *Maross Constr. v Central N.Y. Regional Transp. Auth.*, 66 NY2d 341, 346 [1985]). "The path of analysis, proof and persuasion by which an arbitrator reaches a conclusion is beyond judicial scrutiny" (*Matter of Vermilya [Distin]*, 157 AD2d 1030, 1031 [3d Dept 1990], *lv denied* 75 NY2d 710 [1990]). "A court cannot examine the merits of an arbitration award and substitute its judgment for that of the arbitrator simply because it believes its interpretation would be the better one" (*Matter of City of Yonkers v Police Benevolent Assn. of the City of Yonkers*, 210 AD3d 765, 767 [2d Dept 2022] [citations omitted]; *see Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]; *Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 82-83 [2003]).

Respondent maintains that the awards must be vacated due to the misconduct of the Arbitrator, arguing, among other things, that the Arbitrator threatened to punish respondent if respondent did not agree to an extension of the arbitration agreement, that the Arbitrator

thereafter punished respondent by reversing preliminary awards drafted in respondent's favor, that the Arbitrator improperly held ex parte meetings, that the Arbitrator verbally threatened respondent when accounting methods were questioned, and that the awards were grounded in the Arbitrator's personal bias against respondent. However, the court does not find a sufficient basis to vacate the awards based on arbitrator misconduct or partiality as respondent's contentions are premised mostly on hearsay, speculation and suspicion. Respondent's accusations and characterization of the arbitration proceedings are vehemently disputed by both petitioner and the Arbitrator, and because the review of the merits of an arbitration award are extremely limited, courts cannot assume bias or partiality simply because an arbitrator made an adverse determination against a particular party (*see Rose v Lowrey & Co.*, 181 AD2d 418, 419 [1st Dept 1992] ["the mere inference of partiality . . . is not sufficient to warrant interference with the arbitrator's award"]). Moreover, even considering respondent's contentions that the Arbitrator had improper ex parte consultations, it is not clearly and convincingly established that such conduct necessarily resulted in adverse rulings or other prejudice to respondent (*see Mannor Corp. [Scotland Yard Div.] v Zanzibar Intl.*, 192 AD2d 306 [1st Dept 1993]).

Nevertheless, "a court may vacate an arbitrator's award where it finds that the rights of a party were prejudiced when 'an arbitrator ... exceeded [their] power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made'" (*Barone v Haskins*, 193 AD3d 1388, 1390 [4th Dept. 2021], *appeal dismissed* 37 NY3d 1032 [2021], *lv denied* 37 NY3d 919 [2022], quoting CPLR 7511 [b] [1] [iii]). An award will be vacated as indefinite or nonfinal for purposes of CPLR 7511 (b) (1) (iii) if it does

Case 1-26-43344-ess Doc 13 Filed 08/27/26 Entered 08/27/26 13:30:40

not "dispose of a particular issue raised by the parties" (*Hamilton Partners Limited v. Singer*, 290 AD2d 316, 316 [1st Dept 2002]; *see Papapietro v Pollack & Kotler*, 9 AD3d 419, 419-420 [2d Dept 2004]), or "'if it leaves the parties unable to determine their rights and obligations, if it does not resolve the controversy submitted or if it creates a new controversy'" (*Matter of Westchester County Corr. Officers Benevolent Assn., Inc. v Cheverko*, 112 AD3d 840, 841 [2d Dept 2013], quoting Matter of Meisels v Uhr, 79 NY2d 526, 536 [1992]).

Respondent points out that the arbitration agreement covered "all outstanding business issues between [petitioner] and [respondent] and their companies," and states that there was no formal process for submitting disputes or claims but rather, per the Arbitrator's request, disputes were to be submitted to the Arbitrator during meetings and through emails (Affirmation of Respondent, NYSCEF Doc No. 103 at 4). Among respondent's submissions in support of the cross motion to vacate is an email to the Arbitrator, dated April 21, 2025, wherein respondent sought, among other claims, a determination regarding "[r]esponsibility for liabilities, penalties, assets, and dealings with" the following companies: MHB Products Inc, Omni Group Global LLC, First Choice Online LLC, BB Supplier Inc, Gleeporte Toys LLC/Gleeporte Toys Trust, Real Comfort Trading Inc, Luxie Products LLC, Linko Supplies Inc, Omni Ventures NY LLC, Toyvation LLC, MHB Ventures LLC, 54 Palisade LLC, Techwave Company" (Respondent Email, NYSCEF Doc No. 110). Respondent notes that neither the initial award or supplemental award determined nor even mentioned MHB Products, Inc., Luxie Products LLC, Gleeporte Toys LLC, Omni Group Global LLC, Ral Comfort Trading Inc. or Linko

Supplies, and fails to completely address liabilities, assets or management responsibilities for other companies such as Toyvation LLC, BB Supplier and 1925 N Brunswick LLC (Chart of Unresolved Claims, NYSCEF Doc No 113).

While petitioner argues in reply that only three entities required rulings by the Arbitrator and that issues with the remaining entities were already closed, the court finds petitioner's submissions on this point, a copy of a spreadsheet and an email from respondent (NYSCEF Doc Nos. 169, 170) do not substantiate that the issues cited by respondent were, in fact, either resolved or waived prior to the issuance of the initial and supplemental awards. It is noted that the arbitrator's affirmation, submitted along with petitioner's reply papers, does not address respondent's contentions regarding the companies not mentioned in the awards.

CPLR 7511 (d) provides, in part that "[u]pon vacating an award, the court may order a rehearing and determination of all or any of the issues either before the same arbitrator or before a new arbitrator appointed in accordance with this article. Accordingly, respondent's cross motion (MS # 5) is granted to the extent that the awards are hereby vacated as nonfinal, and this matter is remanded to the Arbitrator to consider and determine the unresolved issues raised by respondent, as outlined in NYSCEF Doc No. 113, and issue a new award. This order shall not require the Arbitrator to rehear and/or reconsider the issues already decided, nor make new determinations and findings which were previously set forth in the initial and supplemental awards. Further, this order shall not preclude the parties from making any new or further agreements, settlements or stipulations with respect

to their disputes, either resolved or unresolved, including seeking a new proceeding before a different arbitrator or before a Beth Din/Rabbinical Panel.

**Conclusion**

In light of this disposition, petitioner's petition to confirm (MS # 1) as well as the motions for preliminary injunctions (MS # 2 and MS # 4) are denied. The temporary restraining orders issued pursuant to MS # 2 and MS # 4 are hereby vacated.

The foregoing constitutes the decision and order of the court.

ENTER,

[redacted]

J. S. C.

Hon. Steven Z. Mostofsky
Justice, Supreme Court

# **Exhibit E**

At an IAS Part 9 of the Supreme Court of the State of New York held in and for the County of Kings at 360 Adams Street, Brooklyn, New York, on the 10th day of July 2026.

PRESENT: HON. Steven Mostofsky, J.S.C.
SUPREME COURT OF THE STATE OF
NEW YORK COUNTY OF KINGS

-------------------------------------------------------------X

In the Matter of the Arbitration of Certain Controversies Between,

**Index No**: 527483/2025
**Motion Sequence #s**
6, 7, 10, 11

ISREAL SCHAYA,

Petitioner,

-against-

**ORDER**

ARON LANDAU

Respondent,

-and-

NECHUMA LANDAU, 1905 FLUSHING REALTY LLC, MAYER LEIFER A/K/A MAYER DAVID LEIFER, AND FLAGSTAR BANK, NA,

Nominal Respondents.

-------------------------------------------------------------X

In its July 6. 2026, Decision and Order, the Court, inter-alia, denied Petioner's Schaya's application to confirm the arbitration decision of Abraham Roth, dated August 11, 2025. The Court determined that the parties had agreed to submit all disputes between them to the arbitrator and that the arbitrator had not issued a final determination on all matters before it. Under CPLR 7511 the Court referred these disputes back to the arbitrator.

As the disputes underlying the contempt allegations and motion for receivership fall within the arbitrator's purview, the motions are denied and the underlying disputes are referred to the arbitrator.

Accordingly, it is hereby,

ORDERED Defendants motion Sequence 6, 7, 10 and 11 are denied.

This constitutes the decision and order of the Court.

[redacted]

Hon. Steven Mostofsky, J.S.C.

Hon. Steven Z. Mostofsky
Justice, Supreme Court

Hon. Steven Z. Mostofsky
Justice, Supreme Court

# **Exhibit F**

**SUPREME COURT OF THE STATE OF NEW YORK**
**APPELLATE DIVISION: SECOND DEPARTMENT**

| | |
|---|---|
| In the Matter of the Arbitration of Certain Controversies Between,<br><br>ISRAEL SCHAYA,<br><br>*Petitioner-Respondent*,<br><br>-and-<br><br>ARON LANDAU<br><br>*Respondent-Appellant*,<br><br>-and-<br><br>NECHUMA LANDAU, 1905 FLUSHING REALTY LLC, MAYER LEIFER A/K/A MAYER DAVID LEIFER, AND FLAGSTAR BANK, NA,<br><br>*Nominal Respondents*. | Appellate Division No. 2026-06455<br><br>Kings County Index #527483/2025<br><br>**~~[PROPOSED]~~ ORDER TO SHOW CAUSE** |

Upon the annexed Affirmation of Craig M. Flanders, dated July 8, 2026, and the [papers] ~~exhibits~~ annexed thereto, the Emergency Affirmation of Craig M. Flanders, dated July 8, 2026, and the exhibits annexed thereto, ~~the accompanying Memorandum of Law in support of a stay pending appeal and an emergency interim stay pending resolution of the instant application, and upon all prior and subsequent pleadings, filings, and proceedings in this and related cases at the appellate and trial level~~:

**LET PETITIONER-RESPONDENT** Israel Schaya show cause before this Court, at the Courthouse [thereof,] located at 45 Monroe Place, Brooklyn, New York, 11201,

on the 22nd day of July, 2026, ~~at 9:30 a.m.~~ or as soon thereafter as counsel may be heard, why an order should not be made and entered, pursuant to CPLR 5519(c), the Court's inherent authority, and such other authority:

1. Staying until a determination on this appeal, pursuant to CPLR 5519(c) and the Court's inherent authority, the portion of Supreme Court's Decision and Order dated June 6, 2026 (the "Order") directing remand of this matter to proceed in an arbitration before Abraham Roth ("Arbitrator Roth") in the absence of any agreement to arbitrate;
2. To the extent necessary, granting leave to appeal pursuant to CPLR 5701(c) and 5513(b); and
3. Granting such other and further relief as the Court deems just and proper.

**SUFFICIENT CAUSE THEREFORE APPEARING**, it is ~~hereby~~:

No interim relief granted

C.J.L./AJAD

~~**ORDERED** that, pending the hearing and determination of this motion and pending further order of this Court, the portion of Supreme Court's Order directing remand of this matter to Arbitrator Roth for further proceedings and/or determination in arbitration is stayed pending resolution of the instant motion for a stay pending appeal; and it is further~~

**ORDERED** that service of a copy of this order to show cause and the papers upon which it was made upon counsel for the Petitioner-Respondent via NYSCEF and by email ~~(to~~ on or before July 10, 2026, shall be deemed sufficient service thereof.

Dated: Brooklyn, New York
July 9, 2026

[redacted]

Hon. Carl J. Landicino, Associate Justice
Appellate Division: 2nd Department

# Exhibit G

## Middlesex County
## Document Summary Sheet

MIDDLESEX COUNTY CLERK NJ
PO BOX 1110
NEW BRUNSWICK NJ 08903

INSTR # 2026042990
O BK 20069 PG 187
RECORDED 07/09/2026 09:39:14 AM
NANCY J. PINKIN, COUNTY CLERK
MIDDLESEX COUNTY, NEW JERSEY
RECORDING FEES $20.00

**Official Use Only**

| | | |
|---|---|---|
| **Transaction Identification Number** | | 8310319 10243404 |
| **Submission Date** *(mm/dd/yyyy)* | 07/06/2026 | |
| **No. of Pages** *(excluding Summary Sheet)* | 2 | |
| **Recording Fee** *(excluding transfer tax)* | $20.00 | |
| **Realty Transfer Tax** | $0.00 | |
| **Total Amount** | $20.00 | |
| **Document Type** | NOTICE/ SETTLEMENT/ CONTRACT OF SALE | |
| **Municipal Codes** EDISON | ED | |
| **Batch Type** | L2 - LEVEL 2 (WITH IMAGES) | |

**Return Address** *(for recorded documents)*

TRIDENT ABSTRACT TITLE AGENCY, LLC

1340 CAMPUS PKWY
WALL TOWNSHIP, NJ 07753

943237

**Additional Information (Official Use Only)**

**** DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MIDDLESEX COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

# Middlesex County
# Document Summary Sheet

| | | | | | |
|---|---|---|---|---|---|
| NOTICE/ SETTLEMENT/ CONTRACT OF SALE | Type | NOTICE/ SETTLEMENT/ CONTRACT OF SALE | | | |
| | Consideration | | | | |
| | Submitted By | CSC (CSC/INGEO SYSTEMS INC) | | | |
| | Document Date | 07/06/2026 | | | |
| | Reference Info | | | | |
| | Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
| | | | | | |
| | SELLER | Name | | Address | |
| | | 12 FAIRVIEW EDISON LLC | | | |
| | BUYER | Name | | Address | |
| | | 12 FAIRVIEW PROP LLC | | | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

**** DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MIDDLESEX COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

# NOTICE OF SETTLEMENT

**File #: TA-163829**

**OWNER(S) NAME(S) AND ADDRESS(ES):**

12 Fairview Edison LLC
12 Fairview Avenue
Edison, NJ 08817

**-AND-**

**BUYER/BORROWER(S) NAME(S) AND ADDRESS(ES):**

12 Fairview Prop LLC
12 Fairview Avenue
Edison, NJ 08817
(about to reside at)

NOTICE is hereby given of a CONTRACT or AGREEMENT OF SALE between the parties hereto.

THE lands to be affected are described as follow:

ALL that certain lot, piece or parcel(s) of land and premises situate, lying and being in the Township of Edison, County of Middlesex, State of New Jersey, commonly known as 12 Fairview Avenue and more particularly described as follows:

Being known and designated as Lot(s) 1.01 , Block 881 as shown on the Township of Edison Tax Map.

[redacted]

Andrew P. Carton , Title Officer
Trident Abstract Title Agency, LLC
1340-A Campus Parkway
Wall, NJ 07753

* This form must be executed by a party or legal representative. If the notice is executed by anyone other than an Attorney at Law of New Jersey, it must be executed and acknowledged or proven in the same manner as a deed.

# ACKNOWLEDGEMENT

STATE OF NEW JERSEY, COUNTY OF MONMOUTH

I CERTIFY that on July 2, 2026,

Andrew P. Carton, Title Officer for Trident Abstract Title Agency, LLC personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) Was the maker of the attached instrument; and
(b) Was authorized to and did execute this instrument as his or her act and deed

| | |
|---|---|
| [redacted] | NICOLE M. LOCASCIO MY COMMISSION EXPIRES NOTARY PUBLIC 10/23/28 STATE OF NEW JERSEY |

Nicole M. LoCascio, Commission Expires
10/23/2028
Notary Public of the State of New Jersey
Commission Number 2306953

# **Exhibit H**

**THE ROSENFELD LAW OFFICE PLLC**

156 Harborview South,
Lawrence, New York 11559

Tel: (516) 547-1717

July 14, 2026

**Re: 1925 N BRUNSWICK LLC,**
**NOTICE OF BANKRUPTCY FILING**

To Whom It May Concern:

This office represents **1925 N BRUNSWICK LLC** relating to the above-referenced matter.

Dear Mr. Rosenbaum:

We are counsel to **1925 N BRUNSWICK LLC** ("**BRUNSWICK**"). It is our understanding that **BRUNSWICK** does not have any existing agreement to arbitrate in front of you and that no court order requires **BRUNSWICK** to arbitrate in front of you. Nonetheless, given our understanding of the history of the prior proceedings, out of an abundance of caution, **BRUNSWICK** writes with an update, notice, and demand.

This letter serves as formal notice that any arbitration purportedly pending before you cannot proceed as to **BRUNSWICK**, and that you are directed to take no further action of any kind in connection therewith. This arbitration is barred from proceeding as to **BRUNSWICK** and **BRUNSWICK**'s interests for two independent and mandatory reasons, each of which standing alone is dispositive.

Initially, we understand you were sent a letter by Aron Landau dated July 7, 2026, specifying that there is no agreement to arbitrate conferring authority upon you to conduct any further arbitration proceedings. The Arbitration Agreement executed on April 10, 2025, expired by its own terms

upon the conclusion of the final extension period on September 12, 2025. No further extensions of the Arbitration Agreement have been executed by **BRUNSWICK** (or others), and no new arbitration agreement has been entered into by **BRUNSWICK** (or other parties as we understand). **BRUNSWICK** does not consent, and has never consented, to any further extension of the expired Arbitration Agreement, nor will **BRUNSWICK** consent to any new arbitration agreement with you serving as arbitrator.

Furthermore, on July 13, 2026, **BRUNSWICK** LLC filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York, Case No. 1-26-43382.

Pursuant to 11 U.S.C. § 362(a), the filing of the bankruptcy petition (attached) operates as an automatic stay, of any and all actions, proceedings, and acts to obtain possession of property of the estate, to exercise control over property of the estate, or to enforce any claim against the debtor or property of the debtor that arose before the commencement of the case. The automatic stay is immediate, absolute, and self-executing. It took effect upon the filing of the petition on July 9, 2026, and requires no further court order.

Accordingly, any arbitration proceeding that purports to affect the assets, interests, property, or rights of **BRUNSWICK** is stayed by operation of law, effective immediately upon the filing of the petition. This includes any and all proceedings before you in this matter that involve or purport to affect **BRUNSWICK**'s assets or property in any manner whatsoever. **This includes any attempt to arbitrate any of the other 13 entities that were once together brought to you for arbitration and also includes a restriction to adjudicate any split in assets of Mr. Aron Landau and Mr. Israel Schaya personally. As all such splits of any one are intertwined with each other.**

Section 362(k)(1) of the Bankruptcy Code provides: *"[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."*

In light of this notice, please be advised that it is **BRUNSWICK**'s position that any action taken

in this arbitration that affects or purports to affect **BRUNSWICK**'s assets, interests, or property, related distributions, draws, loans, transfers, diversion of funds, from related entities, or any share or asset or amount of money for **Mr. Aron Landau and Mr. Israel Schaya personally**, while the automatic stay is in effect would constitute a willful violation of the stay and is, as matter of law, void *ab initio*. Please be guided accordingly.

This notice is not intended to constitute an appearance or participation in any way by **BRUNSWICK** in any arbitration proceeding before you.

Very Truly Yours,

*Avinoam Rosenfeld*________________
**Avinoam Rosenfeld, Esq.**
*Representing:*
**1925 N BRUNSWICK LLC**
The Rosenfeld Law Office PLLC
156 Harborview South,
Lawrence, New York 11559
Tel: (516) 547-1717