UNITED STATES BANKRUPTCY COUR
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X Case No. 26-43344 -ess
In re

TOYVATION, LLC CHAPTER 11

Debtor

---------------------------------------------------------------------X

Solomon Rosengarten hereby declares as follows:

1. I am the attorney for Toyvation LLC, the debtor and debtor-in-possession (the "Debtor"), and submit this declaration in support of the Debtor's motion to hold Abraham Roth ("Roth") in civil contempt for violating the automatic stay and to declare his September 7, 2026 arbitration award (the "Award") void.
2. This motion involves a straightforward violation of the automatic stay.
3. The Debtor commenced this bankruptcy case on July 9, 2026, thereby triggering the automatic stay pursuant to 11 U.S.C. § 362(a).
4. Roth had actual knowledge of the bankruptcy filing and the resulting stay, as will be demonstrated below.
5. Despite the stay, he issued a decision which directly affects the Debtor.

**BACKGROUND**

6. Aron Landau ("Landau") and Israel Schaya "(Schaya") jointly owned or operated a group of companies, including the Debtor, BB Supplier Inc., Luxie Products LLC, Gleeporte Toys LLC, Real Comfort Trading Inc., Linko Supplies Inc., MHB Products Inc., Omni Group Global LLC, First Choice Online LLC, Omni Ventures NY LLC, MHB Ventures LLC, 54 Palisade LLC and 1925 N Brunswick LLC.
7. Landau and Schaya agreed to dissolve their business relationship.

8. Landau and Schaya disagreed as to the distribution of funds from the various companies, including the Debtor, as well as what interest each of them owned in the companies.

9. On April 10, 2025, Landau and Schaya signed an agreement to have defendant Abraham Roth conduct arbitration proceedings to resolve "all outstanding business issues between Israel Schaya & Aron Landau and their companies" (Exhibit "A").

10. On June 20, 2025, the parties agreed that although the initial arbitration agreement was signed between Landau and Schaya, the arbitrator was given the authority to adjudicate disputes involving the fourteen companies named above, including the Debtor (Exhibit "B").

11. This was necessary because the dispute between Landau and Schaya involved their respective relationship to the companies and their interests therein.

12. On August 11, 2025 Roth issued an award (the "Initial Award") and, on September 12, 2025, a supplemental award (Exhibit C").

13. On July 6, 2026, the Supreme Court, Kings County, vacated both awards as nonfinal and remanded to Roth to issue a new Award (Exhibit "D").

14. The Debtor filed its Chapter 11 petition on July 9, 2026.[1]

15. On September 7, 2026, Roth rendered a new decision as arbitrator (Exhibit "E" ).

**VIOLATION OF THE AUTOMATIC STAY**

16. It is well settled that the stay effected by 11 U.S.C. § 362(a) applies to arbitration proceedings. *In re Capgro Leasing Ltd.*, 943 F.2d 249, 251-252 (2nd Cir. 1991); *In re*

[11] Another company with which Landau and Schaya were involved, 1925 N Brunswick ("Brunswick") , filed for Chapter 11 protection on July 13, 2026 (Case No. 1-26-43382-jmm)

*Knightsbridge Dev. Co.*, 884 F.2d 145, 148 (4th Cir. 1989) (voiding post-petition award; a tribunal "must halt its deliberations once bankruptcy intrudes");

17. Section 362(a) provides that the filing of a bankruptcy petition operates as a stay applicable to all entities of, among other things, the commencement or continuation of judicial proceedings against the debtor and the enforcement of prepetition judgments. 11 U.S.C. § 362(a)(1), (2).

18. Notwithstanding the automatic stay, Roth intentionally made a decision in violation of the stay.

19. The decision was rendered despite Roth's knowledge of the bankruptcy filing.

20. On July 14, 2026, the Debtor's counsel emailed Roth a letter enclosing the Clerk's Notice of Bankruptcy Case Filing, advising him of the stay, directing him to take no further action as to the Debtor, and warning that any act affecting the Debtor's property — including distributions, draws, loans and transfers — would be void. (Exhibit "F").

21. .Roth was well aware of the bankruptcy filing as the most recent award Award recites the Debtor's case number (¶ 1.4 [2]) and "reject[s] the contention of counsel for each debtor" on the stay (¶ 4.9(iii)).

22. This was a unilateral decision on the part of Roth, who never sought relief under 11 U.S.C. § 362(d).

**THE ROTH AWARD HAS A DIRECT EFFECT ON THE DEBTOR'S PROPERTY**

**Roth Decided Whether the Companies' Money Belongs to the Companies — Now the Estate — or to the Members**

[2] Unless stated otherwise, references to paragraph numbers herein are to paragraphs in the September 7, 2026 award.

23. The claims submitted to Roth concerned the Companies' assets and liabilities.

24. As will be detailed herein, Mr. Roth viewed all of the companies as one amalgam for purposes of this arbitration.

25. The accounting also treated all of the Companies as if they were one entity and combined the financials as if they were one company (Exhibit "H").

26. The source of the amounts in the Award was the combined accounting (Exhibit "I").

27. As set forth in the accompanying Declaration of Aron Landau, the principal of Debtor, when he inquired as to the basis of the Award, Abraham Roth referred him to Shulem Rosenbaum, an accountant with Roth & Co. (Abraham Roth's company), who had done the accounting in connection with the arbitration.

28. Rosenbaum told him that the accounting for all of the companies had been consolidated into one combined accounting, and that the assets, liabilities, distributions and loans of the individual companies, including the Debtor, were not kept or analyzed at for each company separately.

29. Therefore, it is manifestly evident that the Debtor's assets were included in the September 6, 2026 Award.

30. Landau's April 21, 2025 email to Roth listed as its first claim "Sruly to purchase Toyvation for $500K or 1 Million (plus inventory)," and as its central claim **"Responsibility for liabilities, penalties, assets, and dealings with the following companies,"** naming thirteen companies, including "Toyvation LLC." (Exhibit "J")

31. Landau contended that Schaya "took out the following amounts directly from the company," totaling $1.595 million; Schaya contended that Landau had taken distributions that had to be repaid (Exhibit "J").

32. Roth framed the dispute the same way.

33. On April 29, 2025 he wrote that, for "the business BB/Toyvation (and affiliation companies)," he awaited Roth & Co.'s profit or loss figure "to determine if there is money due or not due from Aron to the company from the profit distributions," and asked the parties to decide "who is taking over which company." (Exhibit "K").

34. As stated, the June 20, 2025 extension empowered Roth "to grant a final arbitration award as to the companies," including Toyvation LLC.

35. The central question before Roth was therefore: **were the distributions and loans withdrawn from the fourteen Companies assets of the Companies — and, as to the Debtor, of its estate — to be conveyed to Landau and/or Schaya?**

36. Roth decided that certain amounts, including amounts which Landau asserted belonged to Toyvation LLC, were awarded to Schaya.

37. The Initial Award fixed the "Money Owed" at $1,628,572.60: $1,561,500 in principal plus interest. (Initial Award ¶ 1.)

38. Roth's June 22, 2025 draft award described five of the seven principal items as distributions "to be returned with interest," made a sixth ($232,500) payable to Schaya because BB Supplier/Toyvation[3] "was operating at a loss," and described the seventh as a $370,000 real estate loan (Page 4 of Exhibit "I").

39. On September 7, 2026, in the award which was rendered after the Debtor filed its Petition, Roth restated the "Money Owed" as $1,616,683.60 and the "Total Award Sum" as $1,706,422.09 and awarded it to Schaya personally. ( ¶ 2.)

---

[3] BB Supplier was one of the fourteen companies in which Landau and Schaya made disputed claims. In the June 22, 2025

40. The figures came from the Companies' books, including the Debtor's. Roth & Co.'s June 19, 2025 "Final Calculation" which combines "Net Income Toyvation" into "Combined Net Income" and then "Net Income for Distribution," which includes Toyvation LLC.
41. The Final Calculation, which is the only source of the Awards shows that the $1,706,422.08 award is built on $1,561,500.00 in distributions and loans of all of the Companies, including Toyvation LLC (Exhibit "L").
42. Mr. Roth identified them as Company distributions and decided that it should be paid to Schaya personally.
43. The "Final Accounting" performed by Roth & Co. (Abraham Roth's accounting firm), confirmed that all of the assets and liabilities of the companies involved in the controversy between Landau and Schaya were combined as if they were a single company.
44. How funds from the Debtor should be distributed is a matter for this Court to decide.
45. After the petition was filed and the distribution of Toyvations's assets was to be determined by the Court alone. Roth decided it anyway. **Put plainly: the distributions listed in the Award are assets of the Debtor's estate, and Roth ruled on them after the petition was filed — awarding them to Schaya.**
46. It is of no moment that the Award allocates the Debtor to Schaya or sends its assets and liabilities to an entity he forms.
47. Section 362(a) does not ask who benefits from a ruling on estate property; the bottom line is that neither an arbitrator nor anyone else can make a decision which is for this Court to decide.
48. **Awarding the commingled pool to one member decides, at least implicitly, that none of it belongs to the Debtor. That is precisely what the stay forbids.**

**The Award Ruled Regarding the Debtor's Assets, Liabilities and Control**

49. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," which includes the Debtor's accounts, receivables and causes of action. 11 U.S.C. § 541(a)(1); *see In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987). The stay does not turn on who is helped or harmed.

50. Beyond Section B, the Award does the following on its face.

**It Extinguishes the Debtor's Claims, Including its Claim to the Distributions**

51. ¶ 3.6 of the Award declares that "all loans, advances, drawings, reimbursements, guarantees, indemnities, capital, profit-share, salary and accounting claims of every kind between Landau and Schaya, and between either of them and any Company, . . . – including every item in the parties' QuickBooks files . . . – are satisfied, merged into this Award and of no further effect," and ¶ 4.7 adds that neither party has "any obligation or liability . . . to any Company," Including the Debtor.

52. Every draw and distribution claim in the Debtor's books is thus declared "of no further effect" — and the same money is redirected to Schaya.

53. ¶ 3.1(d) of the Award also extinguishes "[a]ny obligation between two Companies that are both allocated to Schaya," which includes the Debtor. (September 7, 2026 Award ¶ 3.2(b); Initial Award ¶ 13.)

54. Roth & Co.'s balance sheet carries intercompany balances between the Debtor and BB Supplier Inc. of $643,564 (Page 6 of Exhibit "L").

55. These claims are estate property. 11 U.S.C. § 541(a)(1).

56. **Extinguishing them post-petition is the most direct "exercise [of] control over property of the estate" there is.** Section 5 of the Award says the release "releases no claim of Toyvation LLC"; However, ¶¶ 3.1(d), 3.6 and 4.7 of the September 7, 2026 Award does the opposite.

**The Award orders the Debtor's assets transferred and applied**

57. ¶ 4.1 of the September 7, 2026 Award orders Landau to complete, within sixty days, "transferring each account, credential and item of intellectual property to Schaya or his written designee" — including the Toyvation Amazon seller account and all intellectual property, for a new entity Schaya forms. Incorporated Initial Award ¶ 12 directs that Toyvation's assets "be used to pay the assumed liabilities" it lists, and ¶ 11 fixes a $75,000 "claim against BB Supplier Inc. and/or Toyvation LLC assets."

58. Applying the Debtor's assets and fixing claims against them belong to this Court.

**The September 7, 2026 Award Allocates the Debtor's liabilities**

59. ¶ 3.1(a) of the September 6, 2026 Award allocates to each Company's owner "all of its liabilities of every kind, whenever arising and whether or not disclosed"; ¶ 3.1(b) finds that "it is Landau's conduct that engages" the carve-out for liabilities a party caused; ¶ 3.2(b) assigns Schaya the liabilities not otherwise allocated.

60. Who bears a debtor's liabilities, and whose conduct caused them, bears directly on claims against the estate and on the Debtor's claims against insiders — questions for this Court.

**The September 7, 2026 Award awards control of the Debtor**

61. ¶ 3.2(b) of the September 6, 2026 Award gives Schaya "the management and control" of Toyvation and bars Landau from exercising it.

62. ¶ 4.4(v) of the September 6, 2026 Award bars Landau from causing any Company to "transfer, withdraw or dissipate funds, change passwords or credentials," alter records, or "file a tax return . . . without Schaya's written consent."

63. That subjects the debtor-in-possession to an insider's veto without this Court's order.

**The September 7, 2026 Award penalizes the bankruptcy filing**

64. ¶ 4.9(iv) of the September 6, 2026 Award imposes on Landau "the entirety of the costs, expenses, liabilities and damages arising out of the two Chapter 11 cases" "because Landau caused, procured or authorized both filings."

65. Roth thus passed on the authority for the Debtor's filing — a question for this Court alone — and charged its resort to Chapter 11.

**Roth's Disclaimers**

66. In the September 7, 2026 Award Roth says that no provision "transfers property of any bankruptcy estate" (¶ 3.1(c)) and that stayed provisions are "held in abeyance" (¶ 4.9(ii)).

67. "Labels" do not change the facts : Award § 2 and ¶¶ 3.1(d), 3.6, 4.1 and 4.7 do what they say.

68. **The abeyance clause concedes the point:** Roth decided matters he knew were stayed.

69. **The stay bars the decision, not just enforcement**. *Knightsbridge*, 884 F.2d at 148.

70. Paragraph 4.9(v) makes every provision held in abeyance "fully effective of its own force, without any further award, hearing or act by me" once the stay lifts or the case closes. Roth did not halt; he pre-packaged a self-executing determination against the estate.

71. Although ¶ 4.9(ii) says the stay's reach is "for the Bankruptcy Court alone," in ¶ 4.9(iii) Roth decides it himself.

**The Brunswick Order Gives Roth No Cover**

72. Roth relies on an August 9, 2026 order in the Brunswick Case. (Award ¶¶ 1.4, 4.9(ii).)

73. That Order was entered in a different case and as to a different debtor**.**

74. It barred further hearings and entry of judgment, but allowed a decision as to Brunswick; nothing in it authorized him to decide the ownership, control, assets, liabilities or claims of Toyvation LLC.

75. No order in this case modified the stay.

**ROTH'S VIOLATION IS WILLFUL**

74. Section 362(k)(1) provides that an individual injured by a willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees, and may recover punitive damages in appropriate circumstances. 11 U.S.C. § 362(k)(1).

75. Roth's violation was willful because he knew (a) that the Debtor had filed bankruptcy; (b) knew or was charged with knowledge that the bankruptcy filing imposed an automatic stay, (c) intentionally undertook the challenged act; and (d) failed to obtain relief from the automatic stay before doing so.

76. In his decision Roth attempts to justify making a decision despite the stay because in a related case,[4] Judge Mazer-Marino signed an interim Order partially lifting the stay in that case by allowing him to make a decision related to 1925 N Brunswick LLC (Case No. 26-43382-jmm, ECF #26).

77. This does not give Roth *carte blanche* authority to violate the stay in the instant case.

78. As stated, rendering the decision, in and of itself, violates the automatic stay.

78. Roth cannot establish any objectively reasonable basis for believing that his act was

[4] In re 1925 N Brunswick LLC, Case No. 26-43382-jmm

permissible without first obtaining relief from this Court.

79 One example of Roth's willful violation of the stay,

76. is his decision regarding the Debtor only is evident from his decision directly making an award as to the Debtor.

77. **.** In the Award dated August 11, 2025, ¶ 12 provides that "All assets of BB Supplier Inc. and/or Toyvation LLC belong to Schaya …"

78. ¶ 14. Adds "Landau shall be obligated to complete the following transition and transfer obligations in favor of a new entity to be formed by Schaya … B. Transfer full ownership and administrative access to the following Amazon accounts: Toyvation … within sixty (60) calendar days …"

79. In the Award dated September 7, 2026, Roth reiterates his ruling as to Debtor, determining that Debtor shall be transferred to Schaya **(**¶ 3.1(e).) and adds that ¶ 4.1. "Landau shall complete every obligation described in the Initial Award, paragraph 14, within sixty (60) calendar days of this Award (¶ 4.1.)

**80.** Thus, two months post-petition, Roth directed roughly $147,000 of estate inventory to a shell company of Schaya's choosing and requires that Landau comply with that within 60 days despite the stay.

**CIVIL CONTEMPT**

81. This Court has authority under 11 U.S.C. § 105(a) to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code.

82. Civil contempt is appropriate where a party violates a clear bankruptcy injunction or order. The automatic stay is imposed by operation of federal law upon commencement of the bankruptcy case. *Windstream Holdings, Inc. v. Charter Communications Operating LLC,* 105 F.4th 488 (2nd Cir. 2023).

83. Here there was no ground of doubt concerning the existence of the stay or the prohibition against Roth's conduct.

84. As stated in his decision, Roth was aware of the bankruptcy filing and the stay.

**85.** The Court should therefore hold Roth in civil contempt and impose sanctions sufficient to compensate the Debtor and coerce compliance with the Bankruptcy Code.

**THE COURT SHOULD VACATE THE ROTH DECISION AND RESTORE THE STATUS QUO ANTE**

86. Because Roth's action was taken in violation of § 362(a), it was void. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2nd Cir. 1994); In re *48th St. Steakhouse*, 835 F.2d 427, 431 (2nd Cir. 1987).

87. Accordingly, the Court should declare the Roth decision void *ab initio*.

88. Roth's suggestion that the decision can be severed is untenable.

**89.** It is not severable because, as detailed above, the "Money Owed" comes from one combined accounting in which Toyvation's income feeds the distribution figure.

**DAMAGES AND ATTORNEYS' FEES**

90. The Debtor is entitled to recover actual damages resulting from the willful violation, including reasonable attorneys' fees and costs incurred in addressing the violation.

91. Such damages include, without limitation, attorneys' fees incurred in bringing this motion, court costs and any costs incurred to reverse or nullify Roth's action;

92. Because Roth knowingly proceeded despite the automatic stay, punitive damages are also appropriate if the Court finds the circumstances sufficiently egregious.

WHEREFORE, Debtor respectfully submits that should (a) hold Roth in civil contempt for violating the automatic stay; (c) declare the Award void *ab initio* in its entirety

Dated: September 14, 2026

/s/ Solomon Rosengarten

SOLOMON ROSENGARTEN