EXHIBIT "D"

At an IAS Term, Part 9, of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 6th day of July, 2026.

PRESENT:

HON. STEVEN Z. MOSTOFSKY,

Justice.

---------------------------------------------------------------X

In the Matter of the Arbitration of Certain Controversies Between,

ISRAEL SCHAYA,

Petitioner,

-and-

Index No. 527483/25

ARON LANDAU

Respondent,

-and-

NECHUMA LANDAU, 1905 FLUSHING REALTY LLC, MAYER LEIFER A/K/A MAYER DAVID LEIFER, AND FLAGSTAR BANK, NA,

Nominal Respondents.

---------------------------------------------------------------X

| The following e-filed papers read herein: | NYSCEF Nos.: |
| --- | --- |
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed | 2-1, 42, 30, 94, 99, 17, 19, 20, 21, 57, 71, 78, 101, 103, 139, 142 |
| Opposing Affidavits (Affirmations) | 96, 101, 103, 139, 142 |
| Affidavits/ Affirmations in Reply | 148-151 |

Upon the foregoing papers, petitioner Israel Schaya moves (Motion Sequence [MS] # 1) for an order and judgment 1) pursuant to CPLR 7510, confirming the subject arbitration awards; 2) pursuant to CPLR 7514 directing judgment to be entered upon the

confirmed arbitration awards; and 3) awarding petitioner interest, costs, disbursements, and attorneys' fees.

By separate motion by order to show cause (MS # 2), petitioner moves for a preliminary injunction enjoining certain actions and conduct by respondent Aron Landau.

By order to show cause (MS # 4), respondent moves for a preliminary injunction enjoining certain actions and conduct by petitioner.

Respondent cross-moves (MS # 5) for an order 1) dismissing petitioner's verified amended petition under CPLR 404 (a), 3211, 7510 and the court's inherent authority based on the court's lack of subject-matter jurisdiction to review a nonfinal arbitration award and petitioner's failure to name necessary parties; and dismissing all claims against nominal respondent Nechuma Landau; or 2) alternatively, vacating the arbitration awards under CPLR 7506 (a), (c), and (d) and 7511 (b) (1) (i), (iii) and (iv).

**Background**

This proceeding stems from a disagreement between petitioner and respondent over the dissolution of a series of joint ventures involving toy and PPE businesses and real property investments. On April 10, 2025, petitioner and respondent executed an agreement to submit to arbitration "[a]ll outstanding business issues between [petitioner and respondent] and their companies." The agreement provided, among other things, that:

> "[T]he Arbitrator may apply, among other laws and/or principles, Talmudic law, halachah, common law, statutory law, or other principles or standards, which, in his sole and absolute discretion, he deems appropriate or applicable to the facts and circumstances" and that "the Arbitrator is not bound by rules concerning the admissibility, competency, relevancy, materiality, weight and/or sufficiency of evidence and may in

> his sole and absolute discretion take as evidence any testimony whether presented orally in person and/or by telephone, by affidavit, by letter, by electronic mail or any other manner the Arbitrator may deem appropriate" and "may, in his sole and absolute discretion reject any submission or proffer of testimony or evidence."

Although the arbitration agreement provided that it would expire May 12, 2025, the parties agreed to extensions. In one such extension agreement, executed on June 20, 2025, the arbitration agreement was amended to provide as follows:

> "In addition, the parties represent that they are the sole members, shareholders, and/or owners of the following companies: MHB Products Inc, Omni Group Global LLC, Toyvation LLC, Gleeporte Toys LLC, Gleeporte Toys Trust, Real Comfort Trading Inc, BB Supplier Inc, Luxie Products LLC, Gleeporte Toys Trust, MHB Ventures LLC, 54 Palisade LLC,1925 N Brunswick LLC, & Linko Supplies Inc.
>
> "Both parties hereby extend the rights and powers of the arbitrator, which are set forth in the arbitration agreement, to specifically include the rights and powers to grant a final arbitration award as to the companies set forth above.
>
> "Israel Schaya bought out OmniVentures NYLLC as of January 1, 2021"

The parties thereafter agreed to several more extensions of the arbitration agreement, with the final expiration date of September 3, 2025.

On August 11, 2025, the Arbitrator issued an award deciding several issues between the parties (initial award). The initial award made the following "Findings and Decisions:"

> 1. Landau owes Schaya the total sum of One Million Six Hundred Twenty-Eight Thousand and Five Hundred Seventy-Two Dollars ($1,628,572.60) (the "Money Owed"). (The Money Owed consists of $1,561,500.00 in principal and $67,072.60 in accrued "interest" according to the heter iska provision in the real estate agreement dated June 17, 2024).

2. This award is final on all issues set forth herein. There is one additional dispute in the amount of approximately $450,000 related to an iska arrangement. This dispute is not related to the matters addressed here or the Money Owed but is being addressed in accordance to the arbitration agreement dated April 10, 2025 and has not yet been decided. Mr. Landau requested that a meeting be scheduled for August 18, 2025 to discuss this dispute. Accordingly, I hereby set that date to discuss this matter, and the matter will be decided separately.

3. The loan from TD Bank in the principal amount of $96,642.32, identified as Loan No. 004 00001-4925616-9001, shall be the joint obligation of both parties and shall be repaid by Landau and Schaya in equal shares.

4. The loan from Citizens Bank in the principal amount of $70,701.00 shall be the sole responsibility of Schaya, who shall remain exclusively liable for its repayment. $11,889.00 shall be set off from the Money Owed set forth above.

5. The Money Owed shall be paid in sixty (60) equal monthly installments with each installment payment due on the first calendar day of each successive month commencing from the date of this award.

6. If Landau fails to timely pay any two monthly payments set forth above, the entire remaining balance of the Money Owed shall become immediately due and payable.

7. The real estate agreement dated June 17, 2024, between Schaya and Landau, relating to real estate ventures, shall remain in full force and effect, except as expressly modified below: (i) in paragraph 2, the phrase "decided amount" shall be replaced with "market value as determined by an MAI-certified appraiser", (ii) the provision stating: "Cash payment 15% APR for the year 2024, 20%-year 2025, 25% from year 2026 and on" shall be deleted in its entirety and replaced with the following: "Cash payment shall accrue interest at a fixed rate of 15% per annum (APR), regardless of year, which was structured with a valid heter iska under Jewish law." Further, the principal balance due on the loan set forth in that real estate

agreement is $370,000, which amount is included in the Money Owed.

8. Real properties located at (i) 54 Palisade Road, Linden, New Jersey 07036 and (ii) 418 Elmwood Terrace, Linden, New Jersey 07036 (collectively the "Linden Properties"), in which title to the properties are presently in the name Landau, title was only held by Landau in trust on behalf of Schaya and Schaya is owner of the Linden Properties in all respects.
Landau should promptly transfer title in the Linden Properties to Schaya or to entity as he directs. Further, all membership and/or ownership interests in 54 Palisade LLC and MHB Ventures LLC, companies that manage the Linden Properties are the exclusive property of Schaya. Landau shall have no ownership interest, legal or equitable, in either of those companies or in the membership interests thereof. Notwithstanding the above, Schaya shall be solely responsible for paying the monthly mortgage payments on the Linden Properties referenced above. Each monthly mortgage payment shall be made on or before the fifteenth (15th) calendar day of each month. If Schaya fails to timely pay any two monthly mortgage payments set forth above before title was transferred, then Landau can demand full payment for the entire remaining balance of the mortgage immediately.

9. In accordance with the real estate agreement dated June 17, 2024, the parties are members of an entity known as 1925 N Brunswick LLC, which owns the real property located at 1925 4th Street, North Brunswick, New Jersey, of which Schaya owns a seventy-five percent membership interest (50% as the Money Partner plus 25% as the sweat equity partner totaling 75%) and Landau owns a twenty-five percent membership interest (25% as the sweat equity partner), subject to that percentage changing in accordance with the terms of the agreement. Landau's membership interest in 1925 N Brunswick LLC is hereby pledged and collateralized in favor of Schaya as security for the full and timely payment of the Money Owed as set forth above. This collateral interest shall remain in effect until such time as Landau has paid the full amount owed to Schaya as set forth above. If Landau fails to timely pay any portion of the Money Owed, then based upon a present market value of Landau's interest, as determined by an MAI-certified appraiser, Landau's membership interest in

1925 N Brunswick LLC shall be reduced and turned-over to Schaya in payment of that amount of Money Owed. In addition, any other interest owned by Landau in real property, whether directly or through a company, shall serve as additional collateral for the full and timely payment of the Money Owed as set forth above.

10. All assets held by either party, or by third parties and designated or labeled for purposes of recognition as "TechWave" are and shall be the exclusive property of Schaya. Landau shall have no ownership interest, claim, or entitlement in or to any such TechWave related assets.

11. Since Landau did not take salary in 2024, $75,000 is considered to be payable from BB Supplier Inc. and/or Toyvation LLC to Landau. However, this payable cannot be used to offset any loans and can only be a claim against BB Supplier Inc. and/or Toyvation LLC assets.

12. All assets of BB Supplier Inc. and/or Toyvation LLC belong to Schaya and all liabilities prior to the date of this award that were disclosed during the arbitration (which are as follows: (i) miscellaneous vendors are owed $81,956.50 and Signal Logistics is owed $89,515), shall be Schaya's responsibility except for the TD Bank and Citizens loan set forth above as well as the salary set forth in paragraph 11 above. The assets of BB Supplier Inc. and/or Toyvation LLC shall be used to pay the assumed liabilities set forth in this paragraph.

13. All ownership interest in BB Supplier Inc., and all membership interest in Toyvation LLC, are and shall be the exclusive property of Schaya. Landau shall have no ownership interest, claim, or entitlement in or to either company.

14. Landau shall be obligated to complete the following transition and transfer obligations in favor of a new entity to be formed by Schaya (the "New Entity"):

A. Transfer all vendor contacts and business introductions,

B. Transfer full ownership and administrative access to the following Amazon accounts: Toyvation, Mountain Toys, and the Trump account.

C. Provide and transfer all login credentials and administrative access, including but not limited to full access to the Google Admin Panel governing all past Gmail domain accounts associated with the business operations.

D. Transfer all intellectual property, addressed during the arbitration, including but not limited to trademarks, patents, copyrights, trade secrets, and any proprietary materials, to the New Entity.

Landau shall complete the above transition obligations within sixty (60) calendar days of the issuance of this Award. Failure to timely comply with any portion of this paragraph shall result in damages of Ten Thousand Dollars ($10,000.00) payable by Landau to Schaya.

15. All tax liabilities and losses relating to BB Supplier Inc for the tax years 2021, 2022, 2023, 2024, 2025 and on, and Toyvation LLC from inception, shall be the sole responsibility of Schaya.

16. For a period of sixty (60) calendar days following the issuance of this Award, Landau shall have the option to force, at Schaya's sole option, either (i) Landau's purchase Schaya's membership interest in 1925 N Brunswick LLC or (ii) Schaya's purchase of Landaus membership interest in 1925 N. Brunswick LLC The purchase price for said membership interest shall be determined by calculating the average of two (2) independent valuations performed by MAI-certified appraisers, with one appraiser selected by each party. The cost of both appraisals shall be shared equally by the parties. As a condition precedent to exercising this option, Landau must pay in full the Money Owed as set forth above. If Landau does not timely exercise the option within the sixty-day period or fails to pay the Money Owed in full within the sixty-day period, the option shall expire automatically and be of no further force or effect.

> 17. The non-compete provision contained in the Agreement dated July 4, 2019 between the parties shall remain in full force and effect, and the parties shall continue to be bound by its terms.

A second award with regard to the deferred dispute involving the "iska arrangement" was issued on September 12, 2025 (supplemental award). The instant proceeding to confirm the initial award was commenced by the filing of a notice of petition and petition on August 14, 2025. Petitioner thereafter filed an amended notice of petition and amended petition to confirm the initial and supplemental award.

**Discussion**

The court will first address respondent's cross motion to vacate the awards, the determination of which will also resolve the main motion to confirm (*see* CPLR 7510 [a court "shall confirm an award upon application of a party . . . unless the award is vacated or modified upon a ground specified in [CPLR 7511];" CPLR 7514 [a] [where no grounds specified in CPLR 7511 exist, a "judgment shall be entered upon the confirmation of an award"]).

"'[J]udicial review of arbitration awards is extremely limited'" (*Matter of Richardson v Markovich*, 227 AD3d 999, 1000 [2d Dept 2024], quoting *Matter of Briscoe Protective, LLC v North Fork Surgery Ctr., LLC*, 215 AD3d 956, 957 [2d Dept 2023]). "Under CPLR 7511, an award may be vacated only if (1) the rights of a party were prejudiced by corruption, fraud or misconduct in procuring the award, or by the partiality of the arbitrator; (2) the arbitrator exceeded his or her power or failed to make a final and definite award; or (3) the arbitration suffered from an unwaived procedural defect"

(*Hackett v Milbank, Tweed, Hadley & McCloy*, 86 NY2d 146, 154-155 [1995]). "A party seeking to overturn an arbitration award bears a heavy burden and must establish a ground for vacatur by clear and convincing evidence" (*Matter of Douglas Elliman of LI, LLC v O'Callaghan*, 220 AD3d 945, 947 [2d Dept 2023] [internal quotation marks omitted]; *see Matter of Dluhy v Sive, Paget & Riesel, P.C.*, 220 AD3d 659, 659 [2d Dept 2023]). "Even where the arbitrator makes a mistake of fact or law, or disregards the plain words of the parties' agreement, the award is not subject to vacatur 'unless the court concludes that it is totally irrational or violative of a strong public policy' and thus in excess of the arbitrator's powers" (*Hackett*, 86 NY2d at 155, quoting *Maross Constr. v Central N.Y. Regional Transp. Auth.*, 66 NY2d 341, 346 [1985]). "The path of analysis, proof and persuasion by which an arbitrator reaches a conclusion is beyond judicial scrutiny" (*Matter of Vermilya [Distin]*, 157 AD2d 1030, 1031 [3d Dept 1990], *lv denied* 75 NY2d 710 [1990]). "A court cannot examine the merits of an arbitration award and substitute its judgment for that of the arbitrator simply because it believes its interpretation would be the better one" (*Matter of City of Yonkers v Police Benevolent Assn. of the City of Yonkers*, 210 AD3d 765, 767 [2d Dept 2022] [citations omitted]; *see Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]; *Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72, 82-83 [2003]).

Respondent maintains that the awards must be vacated due to the misconduct of the Arbitrator, arguing, among other things, that the Arbitrator threatened to punish respondent if respondent did not agree to an extension of the arbitration agreement, that the Arbitrator

thereafter punished respondent by reversing preliminary awards drafted in respondent's favor, that the Arbitrator improperly held ex parte meetings, that the Arbitrator verbally threatened respondent when accounting methods were questioned, and that the awards were grounded in the Arbitrator's personal bias against respondent. However, the court does not find a sufficient basis to vacate the awards based on arbitrator misconduct or partiality as respondent's contentions are premised mostly on hearsay, speculation and suspicion. Respondent's accusations and characterization of the arbitration proceedings are vehemently disputed by both petitioner and the Arbitrator, and because the review of the merits of an arbitration award are extremely limited, courts cannot assume bias or partiality simply because an arbitrator made an adverse determination against a particular party (*see Rose v Lowrey & Co.*, 181 AD2d 418, 419 [1st Dept 1992] ["the mere inference of partiality . . . is not sufficient to warrant interference with the arbitrator's award"]). Moreover, even considering respondent's contentions that the Arbitrator had improper ex parte consultations, it is not clearly and convincingly established that such conduct necessarily resulted in adverse rulings or other prejudice to respondent (*see Mannor Corp. [Scotland Yard Div.] v Zanzibar Intl.*, 192 AD2d 306 [1st Dept 1993]).

Nevertheless, "a court may vacate an arbitrator's award where it finds that the rights of a party were prejudiced when 'an arbitrator ... exceeded [their] power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made'" (*Barone v Haskins*, 193 AD3d 1388, 1390 [4th Dept. 2021], *appeal dismissed* 37 NY3d 1032 [2021], *lv denied* 37 NY3d 919 [2022], quoting CPLR 7511 [b] [1] [iii]). An award will be vacated as indefinite or nonfinal for purposes of CPLR 7511 (b) (1) (iii) if it does

not "dispose of a particular issue raised by the parties" (*Hamilton Partners Limited v. Singer*, 290 AD2d 316, 316 [1st Dept 2002]; *see Papapietro v Pollack & Kotler*, 9 AD3d 419, 419-420 [2d Dept 2004]), or "'if it leaves the parties unable to determine their rights and obligations, if it does not resolve the controversy submitted or if it creates a new controversy'" (*Matter of Westchester County Corr. Officers Benevolent Assn., Inc. v Cheverko*, 112 AD3d 840, 841 [2d Dept 2013], quoting Matter of Meisels v Uhr, 79 NY2d 526, 536 [1992]).

Respondent points out that the arbitration agreement covered "all outstanding business issues between [petitioner] and [respondent] and their companies," and states that there was no formal process for submitting disputes or claims but rather, per the Arbitrator's request, disputes were to be submitted to the Arbitrator during meetings and through emails (Affirmation of Respondent, NYSCEF Doc No. 103 at 4). Among respondent's submissions in support of the cross motion to vacate is an email to the Arbitrator, dated April 21, 2025, wherein respondent sought, among other claims, a determination regarding "[r]esponsibility for liabilities, penalties, assets, and dealings with" the following companies: MHB Products Inc, Omni Group Global LLC, First Choice Online LLC, BB Supplier Inc, Gleeporte Toys LLC/Gleeporte Toys Trust, Real Comfort Trading Inc, Luxie Products LLC, Linko Supplies Inc, Omni Ventures NY LLC, Toyvation LLC, MHB Ventures LLC, 54 Palisade LLC, Techwave Company" (Respondent Email, NYSCEF Doc No. 110). Respondent notes that neither the initial award or supplemental award determined nor even mentioned MHB Products, Inc., Luxie Products LLC, Gleeporte Toys LLC, Omni Group Global LLC, Ral Comfort Trading Inc. or Linko

Supplies, and fails to completely address liabilities, assets or management responsibilities for other companies such as Toyvation LLC, BB Supplier and 1925 N Brunswick LLC (Chart of Unresolved Claims, NYSCEF Doc No 113).

While petitioner argues in reply that only three entities required rulings by the Arbitrator and that issues with the remaining entities were already closed, the court finds petitioner's submissions on this point, a copy of a spreadsheet and an email from respondent (NYSCEF Doc Nos. 169, 170) do not substantiate that the issues cited by respondent were, in fact, either resolved or waived prior to the issuance of the initial and supplemental awards. It is noted that the arbitrator's affirmation, submitted along with petitioner's reply papers, does not address respondent's contentions regarding the companies not mentioned in the awards.

CPLR 7511 (d) provides, in part that "[u]pon vacating an award, the court may order a rehearing and determination of all or any of the issues either before the same arbitrator or before a new arbitrator appointed in accordance with this article. Accordingly, respondent's cross motion (MS # 5) is granted to the extent that the awards are hereby vacated as nonfinal, and this matter is remanded to the Arbitrator to consider and determine the unresolved issues raised by respondent, as outlined in NYSCEF Doc No. 113, and issue a new award. This order shall not require the Arbitrator to rehear and/or reconsider the issues already decided, nor make new determinations and findings which were previously set forth in the initial and supplemental awards. Further, this order shall not preclude the parties from making any new or further agreements, settlements or stipulations with respect

to their disputes, either resolved or unresolved, including seeking a new proceeding before a different arbitrator or before a Beth Din/Rabbinical Panel.

**Conclusion**

In light of this disposition, petitioner's petition to confirm (MS # 1) as well as the motions for preliminary injunctions (MS # 2 and MS # 4) are denied. The temporary restraining orders issued pursuant to MS # 2 and MS # 4 are hereby vacated.

The foregoing constitutes the decision and order of the court.

ENTER,

J. S. C.

Hon. Steven Z. Mostotsky
Justice, Supreme Court