**EXHIBIT "E"**

# FINAL ARBITRATION AWARD

Arbitrator: Abraham Roth

Date of Award: September 7, 2026

Parties:

Aron Landau residing at 5221 16th Ave Brooklyn, NY 11204 (Landau)

Israel Schaya residing at 1636 51st Street Brooklyn, NY 11204 (Schaya)

Their jointly owned or jointly operated companies: MHB Products Inc., First Choice Online LLC, Nublek Inc., Luxie Products LLC, Toyvation LLC, Gleeporte Toys LLC, Gleeporte Toys Trust, Omni Group Global LLC (formerly Pure Plant Laboratory), BB Supplier Inc., Real Comfort Trading Inc., Linko Supplies Inc., Omni Ventures NY LLC, MHB Ventures LLC, 54 Palisade LLC, 1925 N Brunswick LLC and TechWave Company.

This Final Arbitration Award is issued in response to the Decision and Order of the Supreme Court, Kings County, dated July 6, 2026. The Arbitration Award dated August 11, 2025 (the "Initial Award") and the Supplemental Final Arbitration Award dated September 12, 2025 (the "Supplemental Award") are incorporated by reference in their entirety and made part of this Award; executed copies are attached to this Award and are not otherwise reproduced in the text of this Award. This Award determines the companies omitted from the Initial Award and the Supplemental Award, addresses the clarifications the parties have requested, and addresses the litigation commenced since the Supplemental Award was issued.

## 1. Background

1.1 I was jointly selected by the parties and accepted the appointment on April 10, 2025, under an arbitration agreement extended and amended by agreements dated May 8, May 26, June 20, June 25, July 1, July 9, July 16, July 23, August 4 and September 3, 2025 (the "Arbitration Agreement"). I was tasked to resolve "all outstanding business issues between Israel Schaya & Aron Landau and their companies."

1.2 I issued the Initial Award on August 11, 2025 and the Supplemental Award on September 12, 2025.

1.3 By Decision and Order dated July 6, 2026 (NYSCEF Doc. No. 462), the Supreme Court, Kings County (Mostofsky, J.) vacated both awards as nonfinal and remanded the matter to me under CPLR 7511 (d) to consider and determine the unresolved issues outlined in NYSCEF Doc. No. 113 and issue a new award, without requiring me to rehear or reconsider matters already decided. By Order dated July 10, 2026 (NYSCEF Doc. No. 474), the Court referred to me the disputes underlying the contempt allegations and the

receivership motion. By Order to Show Cause signed August 20, 2026, the Court directed that a new arbitration hearing proceed before me. That Order did not require me to hold a further hearing on the claims already heard and determined in the vacated awards. I determined that no additional hearing was necessary for me to consider and determine the remanded issues and issue this Award. The evidence and submissions necessary to determine the remanded issues were already before me: those issues were submitted by the parties and argued by both parties during the arbitration. The record is complete, and I have determined them upon that record as paragraphs 2 and 7 of the Arbitration Agreement permit. The Appellate Division denied a stay of the remand.

1.4 Toyvation LLC filed a Chapter 11 petition on July 9, 2026 (E.D.N.Y. Case No. 1-26-43344-ess) and 1925 N Brunswick LLC on July 13, 2026 (Case No. 1-26-43382-jmm). By Order dated August 9, 2026 in the Brunswick case, the Bankruptcy Court held that the automatic stay does not apply to my considering and determining the remanded issues and issuing a new award on the existing record, directed that I not schedule or conduct any further hearing before the hearing of the motion to which that Order relates, and directed that neither party enter judgment on any award before that motion is heard and determined.

1.5 My authority rests on the Arbitration Agreement as extended, on CPLR 7511 (d), and on the Court's orders of July 6, July 10 and August 20, 2026. The expiration of the Arbitration Agreement did not terminate my authority, which those orders confirm and continue. I have exercised the powers conferred by paragraphs 5, 6, 7, 8, 9, 10 and 11 of the Arbitration Agreement.

1.6 The prior awards having been vacated; this Award is the sole award in this arbitration. I have held no further hearings on the supplemental issues. Section 2 clarifies the sums due under the Initial Award and the Supplemental Award; Sections 3 and 4 determine the unresolved issues.

**2. Clarification of the Sums Due**

Clarification. The Initial Award, paragraph 4, directed that $11,889.00 be set off from the Money Owed; that setoff was not applied in arriving at the $1,628,572.60 stated in the Initial Award, paragraph 1, and has not been applied since. Applying it once, and once only, the "Money Owed" is $1,616,683.60. With the $89,738.49 awarded by the Supplemental Award (the "Iska Sum"), the "Total Award Sum" that Landau owes Schaya is $1,706,422.09. The Supplemental Award described the combined amount as $1,718,311.09; that figure did not reflect the setoff, and the difference is that setoff. Wherever this Award refers to the Money Owed, it refers to the net sum of $1,616,683.60; wherever it refers to the Total Award Sum, it refers to $1,706,422.09. The pledge described in paragraph 4.4 secures, and the condition precedent in paragraph 4.2 requires, the Total

Award Sum. No other credit or setoff is allowed except payments made and credits granted below.

**3. Supplemental Award Per Court Order**

3.1 Rules applying throughout Sections 3 and 4.

(a) Where a Company is allocated to a party, that party takes all of its assets and bears all of its liabilities of every kind, whenever arising and whether or not disclosed during the arbitration, and shall indemnify the other party against them. The TD Bank loan, the Citizens Bank loan and the $75,000 salary payable remain as provided in the Initial Award, paragraphs 3, 4 and 11.

(b) Notwithstanding (a), a liability of any Company that was not disclosed during the arbitration or arose on or after August 11, 2025, and that was caused by a party's own act, omission, breach or filing, is borne by that party alone, who shall indemnify the other against it. On this record it is Landau's conduct that engages this rule; it applies to either party according to whose conduct caused the liability.

(c) Every determination in Sections 3 and 4 binds Schaya and Landau as between themselves. None directs any Company, transfers property of any bankruptcy estate, creates or allows any claim against either Chapter 11 estate or any creditor, or may be asserted in either Chapter 11 case. Each is enforceable only between the parties in a court of competent jurisdiction.

(d) Any obligation between two Companies that are both allocated to Schaya is extinguished and gives neither party a claim against the other.

(e) Where a transfer of an account, registration, seller account or item of intellectual property is directed, the transferee is Schaya or such entity as he designates in writing, and the transition obligation in the Initial Award, paragraph 14, is satisfied by transfer to that designee.

3.2 Allocation of the Companies. Subject to paragraphs 3.1 and 4.7:

(a) To Schaya exclusively, with Landau having no ownership interest, claim or entitlement: Luxie Products LLC, including the Amazon seller account the parties call the "Trump" account, which is an asset of Luxie and not of BB Supplier Inc. or Toyvation LLC; Gleeporte Toys LLC and Gleeporte Toys Trust, including the "Gleeporte" trademarks and the "Mountain Toys" account; Real Comfort Trading Inc., including the "Comfeezy" account; Linko Supplies Inc., including the pillow patent; and TechWave Company and all assets designated "TechWave."

(b) BB Supplier Inc. and Toyvation LLC. Ownership and assets were determined in the Initial Award, paragraph 13. In addition: as between the parties Schaya, and not Landau, is entitled to the management and control that ownership carries, and Landau shall take no step to exercise or interfere with it; and all liabilities not allocated by the Initial Award, paragraph 12, are Schaya's under paragraph 3.1(a). Schaya shall use commercially reasonable efforts to obtain Landau's release from every personal guarantee of an obligation of either company within sixty (60) days, and shall reimburse Landau within twenty (20) days of written demand with proof for any amount Landau has paid or pays on any such obligation.

(c) BB Supplier Inc. – capital account and final K-1. Landau's capital account is closed as of the date of this Award and nothing is owing on it in either direction; the $75,000 salary payable being his sole remaining claim. Schaya shall cause a final Schedule K-1 to issue to Landau showing a zero ending capital account and no allocation to him for any period after this Award, and shall indemnify him against any tax, interest or penalty assessed against him personally on account of either company. Landau shall sign the necessary consents and resignations within ten (10) days of request.

(d) Omni Ventures NY LLC. Landau sold and Schaya purchased the whole membership interest on December 18, 2020 for $150,000, effective January 1, 2021, as the parties confirmed in writing then and again in the June 20, 2025 extension agreement. Schaya has been sole member, owner and manager since January 1, 2021; Landau has had no interest or involvement in its business since, including in any dealings in COVID-19 testing products. Schaya is solely responsible for all of its debts, liabilities, taxes and penalties relating to any period on or after that date, and for the defense and satisfaction of every claim against it based on conduct on or after that date, and shall indemnify Landau against them. Within ten (10) days the parties shall execute the Memorandum of Understanding and the Assignment and Assumption Agreement dated June 23, 2025, and Schaya shall then cause all public records to be changed to remove Landau's name; if either fails to execute, this Award is evidence of the transfer and of that allocation.

(e) MHB Ventures LLC and 54 Palisade LLC. Ownership was determined in the Initial Award, paragraph 8. In addition, as between the parties Schaya is entitled to the management and control of both, subject to paragraph 3.3.

(f) 1925 N Brunswick LLC. Membership was determined in the Initial Award, paragraph 9. Management, liabilities and the capital account are determined in paragraph 3.4.

(g) To be dissolved. Neither party shall hold any interest going forward in MHB Products Inc., First Choice Online LLC or Omni Group Global LLC (formerly Pure Plant Laboratory). Solely to wind them up, the interest in and authority over each is vested in Landau, who shall cause each to be dissolved and its filings closed out within ninety (90) days; Schaya shall execute any consent or filing reasonably requested within ten (10)

days. Before dissolving Omni Group Global LLC, Landau shall assign its intellectual property, including the "Pure Gem" trademark, to Schaya or his written designee. The costs of dissolution, and every penalty, assessment, judgment or later-discovered liability of these three companies accrued through the date of this Award – including the judgment against Omni Group Global LLC and its workers' compensation and unfiled-wage penalties – are borne equally, these being exposures of both parties as responsible persons rather than debts attaching to assets either party receives.

(h) Nublek Inc. was dissolved and its final return filed for 2019. Neither party has any claim against the other in respect of it; any liability of it hereafter asserted against either party is borne equally.

3.3 The Linden Properties. The Initial Award, paragraph 8, established Schaya's ownership and his obligation to pay the mortgages, and its remedy for a default before title transferred is not disturbed. Determining what was left open: (i) within thirty (30) days Landau shall execute and deliver deeds conveying 54 Palisade Road and 418 Elmwood Terrace, Linden, New Jersey, with all instruments customarily required to record them in New Jersey, and shall on ten (10) days' notice execute any further instrument a title company, lender or recording office requires. If he fails, he shall pay Schaya $100 for each day of delay as liquidated damages, and this Award may be presented as evidence of Schaya's ownership; (ii) realty transfer fees and taxes are borne equally, as the parties agreed; (iii) until each mortgage is paid or Landau is released from it, Schaya shall keep a segregated account holding at least three months' payments, shall not further encumber either property, shall deliver to Landau or his written designee, by email or by first-class mail, monthly proof of payment within ten (10) days of each month's end, shall use commercially reasonable efforts to refinance or release Landau, and shall indemnify him meanwhile; (iv) for the period after title transfers, if a monthly payment is not made by the fifteenth day Schaya shall pay Landau a sum equal to one month's mortgage payment on that property as liquidated damages for the use of Landau's continuing credit exposure, not more than once per property per month, and if Schaya misses two payments Landau may require him within sixty (60) days either to refinance so as to release Landau or to pay the mortgage in full, failing which Landau may cure and recover what he pays with costs; and (v) Schaya paid and Landau received the $150,000 buyout consideration, of which Landau remitted $90,000 to Schaya under paragraph 3.5(iv), and nothing further is owing on that buyout.

3.4 1925 N Brunswick LLC. (i) As between the parties Schaya, as the seventy-five percent member, is entitled to day-to-day management, and Landau shall take no step to exercise or interfere with it; nothing here displaces a debtor in possession, a trustee or the Bankruptcy Court. (ii) Neither party shall cause or permit the entity's revenue to be held or applied otherwise than in an account in its name and in this order: mortgage principal and interest; taxes and insurance; ordinary operating expenses; and a reserve of three months' debt service. Neither member shall accept a distribution until those are current.

(iii) Within fifteen (15) days Schaya shall give Landau read-only online access to every bank account of the entity and deliver an accounting of all revenue collected and disbursements made from August 11, 2025 to the date of this Award, and shall thereafter deliver monthly statements within ten (10) days of each month's end. As to any period on or after July 13, 2026 this obligation is satisfied by the reporting the Bankruptcy Code requires. Subparagraph (v) reserves the determination of entitlement to the rents; it does not relieve Schaya of the duty to report what was collected and disbursed, and nothing reported is an admission in the adversary proceeding. (iv) Liabilities are borne seventy-five percent by Schaya and twenty-five percent by Landau, except that a liability arising from Schaya's management on or after August 11, 2025 is borne by Schaya alone. Landau is credited $15,000 for the capital account differential identified in the August 4, 2025 extension agreement, applied first against his share of liabilities and any balance paid to him out of any sale, refinancing, liquidation or buy-out ahead of the return of either member's capital; this does not alter the membership percentages in the Initial Award, paragraph 9, or the Total Award Sum. (v) No determination is made as to the rents and "Additional Rent" under the lease of 1925 Fourth Street, North Brunswick, New Jersey, the security deposit, or any escrow of them. Those matters are at issue in Adversary Proceeding No. 1-26-01135-jmm, in which the arbitrator and his firm are defendants, and belong exclusively to the Bankruptcy Court. Nothing in this Award determines, affects, releases or prejudices any claim or defense there, and any right either party has against the other in respect of them is reserved and is not merged by paragraph 3.6 or 4.7.

3.5 The prior agreements. (i) The Agreement dated July 4, 2019 is terminated and of no further effect as to all of its terms, except the non-compete provision in its paragraph 21, which remains in force under the Initial Award, paragraph 17, with the duration, scope and stipulated sum stated in it; its dispute-resolution provision is superseded by the Arbitration Agreement. (ii) The real estate agreement dated June 17, 2024 is not void and remains in force as modified by the Initial Award, paragraph 7; Landau's request that it be declared void is denied. (iii) The $300,000 loan made in 2019 for the purchase of a house was repaid in full and nothing remains owing on it. (iv) The note dated June 19-20, 2023 for the summer home is fully satisfied and discharged upon payment in full of the Total Award Sum, as subparagraph (vi) provides; $90,000 was repaid out of the Linden buyout consideration and the whole remaining balance is included within the principal component of the Money Owed. No penalty under it is assessed, and neither its collateral provisions nor its equity-conversion options may be invoked again. (v) Except as the Initial Award, paragraphs 7, 14 and 17, provide, neither party owes the other any obligation to share, offer or refer any business contact, vendor, customer, attorney, broker, deal, opportunity or idea, or any right of first refusal, referral fee, profit share or accounting on business conducted after this Award. (vi) Discharge on payment. Every loan, note and other instrument of indebtedness between the parties whose balance is included in the Money Owed, including the note dated June 19-20, 2023 and the loan under the real estate agreement dated June 17, 2024, is satisfied and discharged in full

upon payment in full of the Total Award Sum. No such instrument may be enforced thereafter, and no collateral provision, security interest, penalty or equity-conversion right under any of them may be invoked thereafter. This subparagraph does not affect the bank loans dealt with by the Initial Award, paragraphs 3 and 4, which are allocated between the parties and not discharged, or subparagraph (iii) above.

3.6 All other claims between the parties. Except for the obligations, claims, credits and indemnities this Award creates or preserves, all loans, advances, drawings, reimbursements, guarantees, indemnities, capital, profit-share, salary and accounting claims of every kind between Landau and Schaya, and between either of them and any Company, arising at any time through the date of this Award – including every item in the parties' QuickBooks files and every item identified in their submissions in this arbitration – are satisfied, merged into this Award and of no further effect. The only sums owing between the parties are those this Award states.

**4. Performance and Enforcement**

4.1 Transition obligations. Landau shall complete every obligation described in the Initial Award, paragraph 14, within sixty (60) calendar days of this Award, transferring each account, credential and item of intellectual property to Schaya or his written designee. The single sum of $10,000 fixed by the Initial Award, paragraph 14, remains the measure of damages for failure and is not changed.

4.2 The buy-sell option. The option described in the Initial Award, paragraph 16, may be exercised by Landau by written notice to Schaya within sixty (60) calendar days of this Award, specifying which transaction he seeks to force; Schaya shall elect between them in writing within fifteen (15) days. Payment in full of the Total Award Sum remains a condition precedent, and Landau may prepay it without penalty notwithstanding the Initial Award, paragraph 5. If not timely exercised, or if the Total Award Sum is not paid in full within that period, the option expires.

4.3 Payment. The Total Award Sum is payable under the payment schedule and acceleration terms fixed by the Initial Award, paragraphs 5 and 6, the schedule running from the first day of the first month after this Award, with credit for every payment Landau actually made before it and the installments recomputed as the unpaid balance divided by sixty. I make no finding whether Landau defaulted under the Initial Award, none being necessary. From the date of this Award the unpaid balance bears interest at fifteen percent per annum under a valid heter iska, consistent with the Initial Award, paragraph 7; no interest or profit is awarded for any earlier period beyond the Money Owed stated in the Initial Award and the Iska Sum awarded by the Supplemental Award.

4.4 Landau's transfers of assets (the disputes referred on July 10, 2026). The Initial Award, paragraph 9, pledges Landau's interest in 1925 N Brunswick LLC and makes any other

interest he owns in real property additional collateral for what he owes. That pledge attached on August 11, 2025, and remains until the Total Award Sum is paid. Accordingly: (i) Landau holds every such interest subject to Schaya's security interest, may not defeat it by transfer, encumbrance or gift, and is accountable for any encumbered interest he has disposed of; (ii) within twenty (20) days he shall deliver to Schaya a sworn accounting, with supporting documentation, of every transfer, conveyance, encumbrance, assignment, pledge, mortgage or gift of any interest in real property, membership or business interest, or other asset worth $10,000 or more that he made on or after August 11, 2025, identifying the asset, transferee, date, consideration and the disposition of that consideration, and including any conveyance of an interest in 5221 16th Avenue, Brooklyn, New York and the application of the proceeds of any mortgage on it; (iii) any consideration he received on such a transfer that the accounting does not document as applied either to Schaya or to a bona fide antecedent obligation of his for fair value is treated as proceeds of Schaya's collateral and is payable to Schaya, in reduction of the Total Award Sum, within thirty (30) days after the accounting is due, and if no accounting is delivered the whole consideration received on every such transfer is so payable; such payment is on account of the Total Award Sum, not an additional liability, and nothing is payable once it is paid in full; (iv) until it is paid in full Landau shall not sell, transfer, encumber, assign, pledge, dissipate or gift any such interest or asset, other than in the ordinary course of his personal living expenses, as this Award requires, or with Schaya's written consent or on paying the net proceeds to Schaya at closing; and if the property in Edison, New Jersey is sold he shall give ten (10) days' notice and cause the net proceeds otherwise payable to him to be paid to Schaya at closing, up to the outstanding balance, any excess remaining his; (v) Landau shall not cause or permit any Company to transfer, withdraw or dissipate funds, change passwords or credentials, or destroy, alter or tamper with records including emails, and shall not file a tax return for any Company without Schaya's written consent except a filing required to effect a dissolution directed by paragraph 3.2(g); and (vi) nothing in this paragraph determines the rights or liability of Nechuma Landau, 1905 Flushing Realty LLC, Mayer Leifer, Flagstar Bank, N.A. or any other non-party, and nothing sets aside any deed, mortgage or other instrument. This paragraph binds Landau personally.

4.5 Receivership. No receiver is appointed. The obligations imposed by paragraphs 3.3, 3.4 and 4.4 are awarded in place of a receivership. The application for a receiver is denied on the merits.

4.6 Cooperation. On written request either party shall, within ten (10) days, provide any document, information, execution of instruments, consent or other cooperation reasonably necessary to effect or to demonstrate to third parties any transfer, ownership, management, control, dissolution or release this Award provides. A failure to do so entitles the requesting party to rely on this Award as evidence of the matter before any registry, bank, taxing authority, marketplace or court.

4.7 No other obligations. Apart from what this Award sets out, neither party has any obligation or liability to the other, or to any Company, on account of any matter arising through the date of this Award.

4.8 Expenses, professionals and the indemnity. Paragraph 11 of the Arbitration Agreement provides that all expenses of the arbitration, including the Arbitrator's fees at $650.00 per hour, are borne equally "unless the Arbitrator assesses such expenses or any part thereof against any specified party"; paragraph 5 of the Arbitration Agreement permits the Arbitrator to employ professionals and "to apportion the costs for said person(s) as he deems just and proper"; and paragraph 13 of the Arbitration Agreement obliges each party, jointly and severally, to indemnify and hold him harmless against costs, losses, liabilities, damages, lawsuits, din torah, claims and expenses, including wages and fees for loss of employment time at his standard hourly fee, attorneys' fees and fees for any Toen. Accordingly: (i) expenses of the arbitration incurred on or before August 11, 2025 are borne equally; those incurred after that date, the period in which the expense was occasioned by Landau's applications and filings, are assessed wholly against Landau, payable within twenty (20) days after an itemized statement is delivered under paragraph 12 of the Arbitration Agreement, and Landau shall reimburse Schaya for any of them he has paid; (ii) the cost of professionals employed to assist me, including the personnel and professionals of my firm, is apportioned on the same basis and payable on the same terms; (iii) as between the parties, Landau shall bear the whole of the paragraph 13 of the Arbitration Agreement indemnity so far as it arises from any act, filing, proceeding, claim or demand he makes or causes in any forum, whether a secular court, a Beth Din or otherwise, and shall indemnify Schaya on demand for any amount Schaya pays or becomes liable to pay under it on that account, with his reasonable costs of responding; (iv) Landau shall indemnify Schaya for all reasonable costs and damages arising from his failure to perform any obligation this Award imposes, the amount to be fixed by a court; (v) neither the Arbitrator nor any person employed by him is a party to this arbitration and this Award grants none of them any sum or remedy in their own right; the paragraph 13 of the Arbitration Agreement indemnity is enforceable only in a court of competent jurisdiction and I retain no role in it; and (vi) otherwise each party bears its own attorneys' fees, including those incurred in the Supreme Court and the Appellate Division. These obligations are additional to the Total Award Sum and are not credited against it.

4.9 The Chapter 11 cases. (i) Nothing in this Award is an act to obtain possession of or exercise control over property of either estate within 11 U.S.C. § 362 (a) (3); every provision touching Toyvation LLC or 1925 N Brunswick LLC binds the parties as between themselves and yields to the Bankruptcy Code, to any order of the Bankruptcy Court and to any confirmed plan. (ii) To the extent, and only to the extent, that a provision would if given immediate effect be an act stayed as to either debtor, it is held in abeyance as to that debtor. This reserves nothing to me: whether a provision is stayed, and any relief from the stay, are for the Bankruptcy Court alone. The Order of August 9, 2026 has

already determined that the statutory bankruptcy stay does not apply to my determining the remanded issues or issuing this Award to the extent I do not need a hearing. The rest of this Award is effective immediately and severable. (iii) I reject the contention of counsel for each debtor that the stay also bars arbitrating the other companies or any division of the parties' personal assets: section 362 (a) protects the debtor and property of the estate, not affiliates, members or co-parties who have not sought relief, and neither party nor any other Company is a debtor. (iv) As between the parties, Landau shall bear the entirety of the costs, expenses, liabilities and damages arising out of the two Chapter 11 cases and shall indemnify Schaya against them, including professional fees Schaya incurs in either case or any proceeding within it, any administrative expense, United States Trustee fee, penalty, sanction or damages award for which he becomes liable, and any loss from delay or impairment of an asset this Award allocates to him; all of these arose after August 11, 2025, both cases having been filed in July 2026. I so determine because Landau caused, procured or authorized both filings, at a time when ownership of Toyvation LLC had been determined to belong to Schaya and the Court had directed that a new award issue. This allocates the incremental burden of the cases only; it does not alter the allocation of the underlying liabilities, creates no claim against either estate, confers no right on any creditor, may not be asserted in either case, and excludes the matters reserved by paragraph 3.4(v). (v) If as to either debtor the Bankruptcy Court grants relief from the stay, the stay terminates by operation of law, the case is dismissed or closed, the Court abstains from or refers to arbitration any matter determined here, or a trustee or plan administrator consents, then every provision held in abeyance as to that debtor becomes fully effective of its own force, without any further award, hearing or act by me and without this Award being re-executed; no supplemental award is required or will be issued. Where such a provision fixes a period running from the date of this Award, that period runs instead from the date of that event; where it is measured from a stated date, that period continues to run from the stated date. To the extent a confirmed plan or an order of the Bankruptcy Court is inconsistent with a provision, that provision yields permanently and does not take effect; whether an inconsistency exists is for that Court. (vi) The Order of August 9, 2026 directs that neither party enter judgment on any award before the motion to which it relates is heard and determined. Neither party may enter judgment on this Award, in any court, until then or until the Bankruptcy Court otherwise permits. That restriction goes to the entry of judgment only; it does not delay the issuance or effectiveness of this Award or postpone any obligation it imposes. (vii) This Award makes no determination as to any matter at issue in Adversary Proceeding No. 1-26-01135-jmm.

4.10 Complete disposition. Every claim, counterclaim, demand and dispute submitted to me – being all outstanding business issues between Israel Schaya and Aron Landau and their companies through the date of this Award, whether or not expressly named here – is determined. Each of the ten items in NYSCEF Doc. No. 113 has been considered and determined, as has each dispute referred to me on July 10, 2026. All relief requested and

not expressly granted is denied. The sole exception, stated so that it cannot be mistaken for an omission, is the matter reserved by paragraph 3.4(v), which belongs to the Bankruptcy Court. Subject only to that, no claim or issue is left open, and nothing is reserved for further determination by me. Enforcement, and any dispute about compliance, belongs to a court of competent jurisdiction.

**5. Release of Claims**

Effective on the issuance of this Award, each party releases the other, and each Company, from every claim and cause of action arising out of the matters submitted to this arbitration through the date of this Award, other than the right to enforce this Award and any claim or defense at issue in Adversary Proceeding No. 1-26-01135-jmm or otherwise reserved by paragraph 3.4(v). The obligations this Award creates survive the release. This release runs between Schaya and Landau; it releases no claim of Toyvation LLC, of 1925 N Brunswick LLC, of either estate or of any creditor, and no claim against either debtor or estate.

**6. Award**

This Award is final, definite and binding. It is effective immediately and may be entered as a judgment in any court of competent jurisdiction, subject only to paragraph 4.9(vi), which defers the entry of judgment and not the effectiveness of this Award.

Signed,

______________________________

Abraham Roth,

Arbitrator

Date: September 7, 2026

Served on Parties and their counsel by email and FedEx

*[Exhibit A – Arbitration Award dated August 11, 2025 and Exhibit B – Supplemental Final Arbitration Award dated September 12, 2025 – follow and are incorporated in their entirety as part of this Award.]*

# Exhibit A

**ARBITRATION AWARD**

**Arbitrator:** Abraham Roth
**Date of Award:** August 11, 2025
**Parties:**

- Aron Landau residing at 5221 16th Ave Brooklyn, NY 11204 (Landau)
- Israel Schaya residing at 1636 51st Street Brooklyn, NY 11204 (Schaya)
- All their jointly owned companies including but not limited to (i) Toyvation LLC, (ii) BB Supplier Inc, (iii) MHB Ventures LLC, (iv) 54 Palisade LLC, and (v) 1925 N Brunswick LLC.

## 1. Background

This arbitration was conducted privately and voluntarily by agreement of both parties. The arbitrator was jointly selected by the parties and accepted the appointment on April 10, 2025, which arbitration agreement was extended/amended by agreements dated May 8, 2025, May 26, 2025, June 20, 2025, June 25, 2025, July 1, 2025, July 9, 2025, July 16, 2025, July 23, 2025 and August 4, 2025.

The arbitration took place on various dates, and both parties had the full opportunity to present their positions.

## 2. Findings and Decisions

1. Landau owes Schaya the total sum of One Million Six Hundred Twenty-Eight Thousand and Five Hundred Seventy-Two Dollars ($1,628,572.60) (the "Money Owed"). (The Money Owed consists of $1,561,500.00 in principal and $67,072.60 in accrued "interest" according to the *heter iska* provision in the real estate agreement dated June 17, 2024).

2. This award is final on all issues set forth herein. There is one additional dispute in the amount of approximately $450,000 related to an *iska* arrangement. This dispute is not related to the matters addressed here or the Money Owed but is being addressed in accordance to the arbitration agreement dated April 10, 2025 and has not yet been decided. Mr. Landau requested that a meeting be scheduled for August 18, 2025 to discuss this dispute. Accordingly, I hereby set that date to discuss this matter, and the matter will be decided separately.

3. The loan from TD Bank in the principal amount of $96,642.32, identified as Loan No. 004-00001-4925616-9001, shall be the joint obligation of both parties and shall be repaid by Landau and Schaya in equal shares.

4. The loan from Citizens Bank in the principal amount of $70,701.00 shall be the sole responsibility of Schaya, who shall remain exclusively liable for its repayment. $11,889.00 shall be set off from the Money Owed set forth above.

5. The Money Owed shall be paid in sixty (60) equal monthly installments with each installment payment due on the first calendar day of each successive month commencing from the date of this award.

6. If Landau fails to timely pay any two monthly payments set forth above, the entire remaining balance of the Money Owed shall become immediately due and payable.

7. The real estate agreement dated June 17, 2024, between Schaya and Landau, relating to real estate ventures, shall remain in full force and effect, except as expressly modified below: (i) in paragraph 2, the phrase "decided amount" shall be replaced with "market value as determined by an MAI-certified appraiser", (ii) the provision stating: "Cash payment 15% APR for the year 2024, 20%-year 2025, 25% from year 2026 and on" shall be deleted in its entirety and replaced with the following: "Cash payment shall accrue interest at a fixed rate of 15% per annum (APR), regardless of year, which was structured with a valid *heter iska* under Jewish law." Further, the principal balance due on the loan set forth in that real estate agreement is $370,000, which amount is included in the Money Owed.

8. Real properties located at (i) 54 Palisade Road, Linden, New Jersey 07036 and (ii) 418 Elmwood Terrace, Linden, New Jersey 07036 (collectively the "Linden Properties"), in which title to the properties are presently in the name Landau, title was only held by Landau in trust on behalf of Schaya and Schaya is owner of the Linden Properties in all respects. Landau should promptly transfer title in the Linden Properties to Schaya or to entity as he directs. Further, all membership and/or ownership interests in 54 Palisade LLC and MHB Ventures LLC, companies that manage the Linden Properties are the exclusive property of Schaya. Landau shall have no ownership interest, legal or equitable, in either of those companies or in the membership interests thereof. Notwithstanding the above, Schaya shall be solely responsible for paying the monthly mortgage payments on the Linden Properties referenced above. Each monthly mortgage payment shall be made on or before the fifteenth (15th) calendar day of each month. If Schaya fails to timely pay any two monthly mortgage payments set forth above before title was transferred, then Landau can demand full payment for the entire remaining balance of the mortgage immediately.

9. In accordance with the real estate agreement dated June 17, 2024, the parties are members of an entity known as 1925 N Brunswick LLC, which owns the real property located at 1925 4th Street, North Brunswick, New Jersey, of which Schaya owns a seventy-five percent membership interest (50% as the Money Partner plus 25% as the sweat equity partner totaling 75%) and Landau owns a twenty-five percent membership interest (25% as the sweat equity partner), subject to that percentage changing in accordance with the terms of the agreement. Landau's membership interest in 1925 N Brunswick LLC is hereby pledged and collateralized in favor of Schaya as security for the full and timely payment of the Money Owed as set forth above. This collateral interest shall remain in effect until such time as Landau has paid the full amount owed to Schaya as set forth above. If Landau fails to timely pay any portion of the Money Owed, then based upon a present market value of Landau's interest, as determined by an MAI-certified appraiser, Landau's membership interest in 1925 N Brunswick LLC shall be reduced and turned-over to Schaya in payment of that amount of Money Owed. In addition, any other interest owned by Landau in real property, whether

directly or through a company, shall serve as additional collateral for the full and timely payment of the Money Owed as set forth above.

10. All assets held by either party, or by third parties and designated or labeled for purposes of recognition as "TechWave" are and shall be the exclusive property of Schaya. Landau shall have no ownership interest, claim, or entitlement in or to any such TechWave related assets.

11. Since Landau did not take salary in 2024, $75,000 is considered to be payable from BB Supplier Inc. and/or Toyvation LLC to Landau. However, this payable cannot be used to offset any loans and can only be a claim against BB Supplier Inc. and/or Toyvation LLC assets.

12. All assets of BB Supplier Inc. and/or Toyvation LLC belong to Schaya and all liabilities prior to the date of this award that were disclosed during the arbitration (which are as follows: (i) miscellaneous vendors are owed $81,956.50 and Signal Logistics is owed $89,515), shall be Schaya's responsibility except for the TD Bank and Citizens loan set forth above as well as the salary set forth in paragraph 11 above. The assets of BB Supplier Inc. and/or Toyvation LLC shall be used to pay the assumed liabilities set forth in this paragraph.

13. All ownership interest in BB Supplier Inc., and all membership interest in Toyvation LLC, are and shall be the exclusive property of Schaya. Landau shall have no ownership interest, claim, or entitlement in or to either company.

14. Landau shall be obligated to complete the following transition and transfer obligations in favor of a new entity to be formed by Schaya (the "New Entity"):

    A. Transfer all vendor contacts and business introductions,
    B. Transfer full ownership and administrative access to the following Amazon accounts: Toyvation, Mountain Toys, and the Trump account.
    C. Provide and transfer all login credentials and administrative access, including but not limited to full access to the Google Admin Panel governing all past Gmail domain accounts associated with the business operations.
    D. Transfer all intellectual property, addressed during the arbitration, including but not limited to trademarks, patents, copyrights, trade secrets, and any proprietary materials, to the New Entity.

    Landau shall complete the above transition obligations within sixty (60) calendar days of the issuance of this Award. Failure to timely comply with any portion of this paragraph shall result in damages of Ten Thousand Dollars ($10,000.00) payable by Landau to Schaya.

15. All tax liabilities and losses relating to BB Supplier Inc for the tax years 2021, 2022, 2023, 2024, 2025 and on, and Toyvation LLC from inception, shall be the sole responsibility of Schaya.

16. For a period of sixty (60) calendar days following the issuance of this Award, Landau shall have the option to force, at Schaya's sole option, either (i) Landau's purchase Schaya's

membership interest in 1925 N Brunswick LLC or (ii) Schaya's purchase of Landaus membership interest in 1925 N. Brunswick LLC The purchase price for said membership interest shall be determined by calculating the average of two (2) independent valuations performed by MAI-certified appraisers, with one appraiser selected by each party. The cost of both appraisals shall be shared equally by the parties. As a condition precedent to exercising this option, Landau must pay in full the Money Owed as set forth above. If Landau does not timely exercise the option within the sixty-day period or fails to pay the Money Owed in full within the sixty-day period, the option shall expire automatically and be of no further force or effect.

17. The non-compete provision contained in the Agreement dated July 4, 2019 between the parties shall remain in full force and effect, and the parties shall continue to be bound by its terms.

---

## 3. Release of Claims

Both parties agree that, once the above terms are completed, no further claims will be pursued in relation to this dispute.

---

## 4. Award

This Award is final and binding and may be entered as a court judgement for enforcement.

Signed,

**Abraham Roth,**
Arbitrator
Date: August 11, 2025

Served on Parties by email and FedEx

# Exhibit B

## SUPPLEMENTAL FINAL ARBITRATION AWARD

**Arbitrator**: Abraham Roth

**Date of Award:** September 12, 2025

**Parties:** Aron Landau residing at 5221 16th Ave Brooklyn, NY 11204 (Landau)

Israel Schaya residing at 1636 51st Street Brooklyn, NY 11204 (Schaya)

All their jointly owned companies including but not limited to (i) Toyvation LLC, (ii) BB Supplier Inc, (iii) MHB Ventures LLC, (iv) 54 Palisade LLC, and (v) 1925 N Brunswick LLC.

### 1. Background

This arbitration was conducted privately and voluntarily by agreement of both parties. The arbitrator was jointly selected by the parties and accepted the appointment on April 10, 2025, which arbitration agreement was extended/amended by agreements dated May 8, 2025, May 26, 2025, June 20, 2025, June 25, 2025, July 1, 2025, July 9, 2025, July 16, 2025, July 23, 2025, August 4, 2025 and September 3, 2025.

The arbitration took place on various dates, and both parties had the full opportunity to present their positions.

### 2. Findings and Decisions

As noted in paragraph 2 of my Award dated August 11, 2025, one claim remained open for further determination concerning a dispute related to an *iska* arrangement. I received additional testimony and submissions from the parties. In the course of these proceedings, Israel Schaya agreed to waive some of his claims, and I have now fully considered the matter. I hereby determine that Aron Landau owes Israel Schaya the additional sum of $89,738.49. This Award resolves the only claim expressly left open in my August 11, 2025 Award.

After accounting for the Award dated August 11 in the amount of $1,628,572.60, together with the Award issued today in the amount of $89,738.49, the combined amount is $1,718,311.09. Accordingly, Mr. Landau owes Mr. Schaya the aggregate sum of $1,718,311.09, reflecting both final awards.

Subsequent to issuing my August 11, 2025 Award, Aron Landau moved to reargue that determination, alleging various errors, including accounting and mathematical inaccuracies. After careful review and consideration, I find that my August 11, 2025 Award is correct and final in all respects as to the matters determined therein. That Award remains fully binding and is not changed or reopened.

Accordingly, the August 11, 2025 Award stands as the final determination of all claims and counterclaims addressed therein, and today's Award is the final determination of the sole outstanding claim. Together, they constitute the full and final resolution of all claims and counter claims raises in this arbitration. No claims remain open, and this matter is now concluded in its entirety.

**3. Award**

This Award is final and binding and may be entered as a court judgement for enforcement.

Signed,

**Abraham Roth,**

Arbitrator

Date: September 12, 2025

Served on Parties by email and FedEx